## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

GENENTECH, INC., and CITY OF HOPE )
                                   )
         Plaintiffs, )
                                     )  PUBLIC VERSION FILED: December 13, 2017
       v. )
                                       )  C.A. No. 17-1471-GMS
AMGEN INC. )
                                       )
         Defendant. )  JURY TRIAL DEMANDED
                                       )

## FIRST AMENDED AND SUPPLEMENTAL COMPLAINT FOR PATENT INFRINGEMENT AND DECLARATORY JUDGMENT

Plaintiffs Genentech, Inc., and City of Hope, by their attorneys, bring this Complaint against Defendant Amgen, Inc. pursuant to 35 U.S.C. § 271(e) and for declaratory judgments and associated relief pursuant to 28 U.S.C. §§ 2201, 2202 as a remedy for Amgen's flagrant disregard of its statutory obligations under the Biologics Price Competition and Innovation Act (BPCIA) and its infringement of Plaintiffs' patents protecting the revolutionary cancer therapy Avastin®.

### NATURE OF THE CASE

1. In November 2016 Amgen filed an Abbreviated Biologics License Application (aBLA) with the Food and Drug Administration under 42 U.S.C. § 262(k) for approval of ABP 215 (Mvasi™) as a "biosimilar" to Genentech's best-selling anticancer therapy Avastin® (bevacizumab). The manufacture and sale of bevacizumab is protected by a portfolio of patents Genentech owns or exclusively controls.

2. The BPCIA created an abbreviated regulatory approval regime for biosimilars, allowing applicants to rely on the extensive clinical testing the innovator company previously conducted in bringing the branded biologic product to market. Filing an aBLA constitutes an act

1

of infringement, *see* 35 U.S.C. § 271(e)(2), although the innovator company (or "reference product sponsor") is prohibited from filing suit alleging such § 271(e)(2) infringement until certain requirements of 42 U.S.C. § 262(*l*), commonly called the "patent dance," are satisfied.

3.     The "patent dance" is designed to narrow or eliminate disputes over infringement prior to FDA approval and commercialization of the biosimilar product, and to ensure the "reference product sponsor" has received enough information about the proposed biosimilar and the applicant's plans to commercialize it to assert its patents.  In particular, the BPCIA directs exchanges of certain information between the reference product sponsor and the subsection (k) applicant, after which the reference product sponsor is authorized to initiate litigation within thirty days in the venue of its choosing.

4.     Amgen, the subsection (k) applicant, and Genentech, the reference product sponsor, completed the final step of the "patent dance"—the exchange of lists of patents pursuant to § (*l*)(5)—on October 13, whereupon Plaintiffs promptly brought this action as required by the BPCIA (42 U.S.C. § 262(*l*)(6)) to address Amgen's § 271(e) infringement.  These claims are in addition to those brought in Case No. 17-1407-GMS (D. Del.) seeking legal, equitable and declaratory relief under a different part of the Patent Act, 35 U.S.C. § 271(a)-(c), including for infringement committed by Amgen for the manufacture of ABP 215 that has already occurred.

5.     Amgen's conduct throughout the "patent dance" included completely ignoring certain obligations and acting in bad faith with respect to others.  The BPCIA imposes adverse consequences on subsection (k) applicants who behave in this manner, and Genentech seeks, in addition to its infringement claims under 35 U.S.C. § 271(e), declaratory judgments that those consequences now apply.

2

6.      Among the relief Genentech seeks is a judgment declaring Amgen bound by the formal representation it made pursuant to 42 U.S.C. § 262(l)(3)(B)(ii)(II) ███████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████ ▌ ██████████ ▆ Amgen subsequently announced that ███████████████████████████████████ ████████████████████ and that it did not consider itself bound by the prior representation it made pursuant to this statutory provision.

**THE PARTIES, JURISDICTION, AND VENUE**

7.      Genentech, Inc. is a corporation organized under the laws of the State of Delaware, with its principal place of business at 1 DNA Way, South San Francisco, California 94080.

8.      City of Hope is a California not-for-profit organization, with its principal place of business at 1500 East Duarte Road, Duarte, California 91010.  City of Hope co-owns with Genentech U.S. Patent Nos. 6,331,415 and 7,923,221 relating to the process for manufacturing bevacizumab and other recombinant antibodies.

9.      Amgen Inc. is a corporation organized under the laws of the State of Delaware, with its principal place of business at One Amgen Center Drive, Thousand Oaks, California 91320.  Amgen is in the business of, among other things, manufacturing biologic drugs and

---

[1] "Not later than 60 days after receipt of the list under subparagraph (A), the subsection (k) applicant— . . . (ii) shall provide to the reference product sponsor, with respect to each patent listed by the reference product sponsor under subparagraph (A) or listed by the subsection (k) applicant under clause (i)—(I) a detailed statement that describes, on a claim by claim basis, the factual and legal basis of the opinion of the subsection (k) applicant that such patent is invalid, unenforceable, or will not be infringed by the commercial marketing of the biological product that is the subject of the subsection (k) application; or (II) a statement that the subsection (k) applicant does not intend to begin commercial marketing of the biological product before the date that such patent expires . . . ."

ME1 26239115v.1

marketing, distributing, offering for sale, and selling them throughout the United States and in the State of Delaware.  Long an innovator company, Amgen has recently entered the business of copying biologic medicines invented by other companies and seeking to invalidate the patents protecting those products.

10.     Plaintiffs' claims for patent infringement arise under the patent laws of the United States, Title 35 of the United States Code, Title 42 of the United States Code, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

11.     This Court has personal jurisdiction over Amgen because it is incorporated in the State of Delaware; because Amgen sought approval to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of ABP 215 in the United States, including in the State of Delaware; and because Amgen intends to market, distribute, offer for sale, and/or sell ABP 215 in the United States, including in the State of Delaware, deriving substantial revenue therefrom.

12.     In addition, Amgen has consented to jurisdiction in the State of Delaware in numerous prior cases arising out of its manufacture, use, offer for sale, sale, and/or importation of Amgen pharmaceutical products in the United States, including in the State of Delaware.  This includes cases Amgen has initiated as the plaintiff.

13.     Because Amgen is incorporated in Delaware, venue is proper in this district pursuant to 28 U.S.C. § 1400(b).  In addition, Amgen has consented to venue in this district repeatedly.

## FACTUAL BASIS FOR RELIEF

14.     Subsection (k) applicants are required to take the first step in the "patent dance." After the FDA accepted its aBLA for filing last January, Amgen was required within twenty days

4

to provide Genentech with a copy of the application "and such other information that describes the process or processes used to manufacture the biological product that is the subject of such application." 42 U.S.C. § 262(*l*)(2)(A).  Biologic medicines are typically manufactured through complex and frequently patent-protected processes not fully disclosed in regulatory applications, and Congress recognized that a reference product sponsor could not fairly evaluate the infringement of its patents based on solely on a review of the applicant's aBLA.  *Sandoz, Inc. v. Amgen Inc.*, 137 S. Ct. 1664, 1670-71 (2017).

15.     Amgen disregarded that obligation.  While providing Genentech with the aBLA for ABP 215, Amgen persistently refused to provide the "other information" about Amgen's manufacturing processes that the statute's plain text required, even after Genentech provided any exemplary list of information it believed it needed to evaluate its patent rights.  Amgen's stonewalling is particularly brazen because in cases where it was the "reference product sponsor," Amgen sued other subsection (k) applicants for violating 42 U.S.C. § 262(*l*)(2)(A) based on conduct it now claims constitutes compliance with the BPCIA.  After providing Genentech with the aBLA and nothing else, Amgen unilaterally declared that its production was complete under § (*l*)(2)(A).

16.     The Court heard extensive arguments on Genentech's objection to Amgen's production but determined it was without authority at that time to provide a remedy, *see* Exhibit 2 at 18:18-19:16, 22:17-23:11; 30:14-31:17, leaving Genentech with the choice of continuing the "patent dance" or filing suit immediately under 42 U.S.C. § 262(*l*)(9)(C).  Genentech chose the former.  On March 24, 2017, pursuant to § 262(*l*)(3)(A), Genentech provided Amgen with a list of patents for which "a claim of patent infringement could reasonably be asserted" if Amgen commercialized its product.  Genentech made it clear to Amgen that it did "not believe Amgen

5

complied with its obligations under § 262 (*l*)(2)(A)" and that Genentech's list of patents was compiled after review of Amgen's aBLA, "the only information [Amgen] ha[s] provided."

17.    Upon receiving Genentech's list, Amgen had sixty days to serve a "detailed statement" addressing each patent on the list, explaining why each such patent is invalid, unenforceable, or not infringed (42 U.S.C. § (*l*)(3)(B)(ii)(I)) or representing that Amgen would not begin commercial marketing of ABP 215 before that patent expires (42 U.S.C. § 262(*l*)(3)(B)(ii)(II)).

18.    Amgen responded to Genentech on May 23, 2017 with the following representation:

| U.S. Patent No. | Expiration Date |
|---|---|
| ███████ | ████████ |
| ███████ | ██████ |
| ███████ | ██████ |
| ███████ | ███████ |
| ███████ | ██████ |
| ███████ | ██████ |
| ███████ | ███████ |

6

██████████████████████████████████████████████████████████████████

███████████████████████████████████████

19.     Under cover of the same letter, Amgen provided contentions regarding the

remaining ███████ patents on Genentech's list, but those contentions were plainly deficient and

failed to provide Genentech with a meaningful opportunity to evaluate its rights as the statute

contemplated.  Among other things, Amgen's allegations of noninfringement were conclusory—

they simply asserted that particular limitations were not infringed and provided overbroad

citations to Amgen's aBLA in support. ███████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████████████████████████████████

██████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

████████████████████████████████████

20.     Pursuant to § 262(*l*)(3)(C), Genentech on July 22, 2017 provided detailed

responses to Amgen's contentions with respect to seventeen patents.  Having received and

considered Amgen's contentions, and in an effort to narrow the scope of litigation as the statute

contemplates, Genentech declined to serve contentions as to two of the patents that had been on

its (*l*)(3)(A) list and later told Amgen it did not plan to assert them.  Genentech again reserved its

rights under the statute on account of Amgen's failure and refusal to produce all of the information about ABP 215 that the statute required.  ███████████████

21.     At this point the parties were required to negotiate over which patents on Genentech's list should be litigated in a § 271(e) infringement action.  42 U.S.C. § 262(*l*)(4)(A).  If they agreed, Genentech (but not Amgen) had thirty days to sue on those patents.  42 U.S.C. § 262(*l*)(6)(A); 35 U.S.C. § 271(e)(2).  If after fifteen days of "good faith" negotiations the parties were unable to agree, Amgen was obligated to pick a number of patents, and thereafter, the parties were supposed to exchange lists of patents corresponding to that number within five days.  *See* 42 U.S.C. § 262(*l*)(5).[2]  Genentech (but, again, not Amgen) would then have thirty days to sue for infringement on every patent listed by either party.  42 U.S.C. § 262(*l*)(6)(B); 35 U.S.C. § 271(e)(2).

22.     Although it received Genentech's responsive contentions on July 22, 2017, Amgen did not initiate these negotiations until September 14, 2017, more than fifty days later.  Genentech repeatedly sought to initiate the negotiations, so that it could assert its patents promptly and assert its claim of infringement pursuant to § 271(e) in sufficient time to permit the Court to adjudicate its claims on a full evidentiary record before Amgen commercialized its biosimilar product, as the statute contemplates.  Amgen provided no reasonable explanation for its decision to delay the initiation of negotiations, other than its statement that it was reviewing Genentech's contentions.  Genentech sent multiple letters to Amgen during this period reiterating its willingness to begin the required negotiations.  But ██████████████████

███████████████████████████████████████████████████████

---

[2] If the subsection (k) applicant selects "zero" patents, the reference product sponsor may list one patent.  42 U.S.C. § 262(*l*)(5)(B)(i)(II).

ME1 26239115v.1

█████████████████████████████ Genentech did not take other steps to accelerate the pace of negotiations, and it refrained from commencing litigation against Amgen.

23.     When the parties met on September 14, 2017 to begin the negotiations, Genentech proposed filing suit under § 271(e) on all of the patents on which Amgen served contentions save the two Genentech no longer was asserting.  Genentech also proposed to sue ████████████ ████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████ ████████████████████████████████████████ When Genentech learned of Amgen's ███████████████████ during the "patent dance," it asked Amgen on several occasions to provide data about them to determine whether Amgen had a valid defense to infringement under 35 U.S.C. § 271(e)(1).  Amgen refused to provide any details.  Upon information and belief based upon Amgen's refusal to provide details about ██████████ ████████████████████████████████████████████ falls outside the safe harbor provided by 35 U.S.C. § 271(e)(1).

24.     During the September 14 meeting and in the weeks thereafter, Amgen never responded to Genentech's proposal regarding the number of patents it wished to litigate or identified a set of patents that it proposed to be included in litigation.  Instead, on October 2, it declared unilaterally an impasse in the "good faith negotiations."  At that point, Amgen was required to identify the number of patents to be litigated.  42 U.S.C. § 262(*l*)(5)(A).  Amgen did not do so, promising instead to "be in touch."  Amgen's next communication occurred on October 6.  Rather than provide a number of patents pursuant to § 262(*l*)(5)(A), that communication purported to provide Genentech notice pursuant to § 262(*l*)(8) that it would

9

begin commercial marketing of its product in as little as 180 days.  Amgen's email was sent after the close of business on the East Coast, where Genentech's lawyers work, on the Friday before a Federal holiday weekend and during a religious holiday (Sukkot).  Having sent that email, Amgen proceeded to file a preemptive lawsuit in the U.S. District Court for the Central District of California, where Amgen is headquartered.  Then, having purported to provide notice and having filed its preemptive lawsuit, Amgen sent another email proposing that the parties complete the "patent dance" the following week, with Amgen identifying the number of patents it wanted to litigate and the parties exchanging lists three days later.  Amgen's communications to Genentech of October 6 made no mention of the fact that Amgen had filed a preemptive lawsuit.

25.    Section 262(*l*)(9)(C) prohibits declaratory judgement actions by subsection (k) applicants who, like Amgen, have not complied with their production obligations under § 262(*l*)(2)(A).  Even if Amgen had complied with § 262(*l*)(2)(A), § 262(*l*)(9)(B) preserves the patent owner's right to sue first by prohibiting preemptive declaratory judgment actions like Amgen's filed before completion of the "patent dance:"

> If a subsection (k) applicant fails to complete an action required of the subsection (k) applicant under paragraph (3)(B)(ii), paragraph (5), paragraph (6)(C)(i), paragraph (7), or paragraph (8)(A), the reference product sponsor, *but not the subsection (k) applicant*, may bring an action under section 2201 of title 28 for a declaration of infringement, validity, or enforceability of any patent included in the list described in paragraph (3)(A), including as provided under paragraph (7).

(emphasis added.)  Amgen's preemptive suit in its preferred venue violates these statutory provisions and, moreover, challenges the infringement, validity and/or enforceability invalidity of all twenty-seven patents on Genentech's initial § (*l*)(3)(A) list. ███████████████

███████████████████████████████████  *See* Case No. 17-7349 (C. D. Cal.).

That lawsuit is improper for another reason—Amgen may not preempt Genentech and City of Hope's claims for infringement damages by rushing to sue in its preferred venue for declaratory relief on a defense to those claims. Case No. 17-1407-GMS, filed by Plaintiffs in this Court on the same day as Amgen's preemptive suit in California, is intended to protect Plaintiffs' rights in this regard.

26.     The purpose of Amgen's behavior is manifest. By withholding critical and statutorily required "other information" about its manufacturing processes in the very first step of the "patent dance," Amgen deprived Genentech of its right to conduct a thorough review of potential infringement before Amgen's proposed copy of Avastin® comes to market. And Amgen's noncompliance in the latter stages of the "patent dance" plainly was designed to deprive Genentech of its statutory right to initiate patent ligation over ABP 215 in the venue of its choosing, not Amgen's.

27.     The same day it filed suit, Amgen purported to provide Genentech with notice that Amgen may begin commercial marketing of ABP 215 as early as April 4, 2018 (180 days after October 6, 2017). As noted *supra*, ████████████████████████████████ ████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████. When Genentech sought assurances that Amgen "will honor its statutory commitment and not attempt to commercialize Mvasi™ before that date" Amgen asserted that it "made no such commitment." ████████████████████

28.     Subsequent to the service of Genentech's list of patents it believed could reasonably be asserted against ABP 215 pursuant to 42 U.S.C. § 262(*l*)(3)(A), United States

Patent No. 9,795,672 ("the '672 patent") (Exhibit 32 hereto), was duly and legally issued on Oct. 24, 2017.

29.     Pursuant to 42 U.S.C. § 262(*l*)(7), on November 2, 2017 Genentech provided to Amgen a supplement to its list of patents pursuant to 42 U.S.C. § 262(*l*)(3)(A) to include the '672 patent.  Amgen notified Genentech of its contentions pursuant to 42 U.S.C. § 262(*l*)(3)(B), with respect to this patent by email dated December 1, 2017.

30.     Genentech therefore brings this action for infringement, declaratory judgment, and additional appropriate relief, specifically an order declaring that Amgen's actions are contrary to the BPCIA and that the manufacture, use, offer for sale, and/or sale of Amgen's proposed biologic product infringes Genentech's intellectual property rights.

## COUNT 1
### (INFRINGEMENT OF THE '297 PATENT)

31.     Plaintiffs incorporate each of the preceding paragraphs 1 through 30 as if fully set forth herein.

32.     United States Patent No. 6,054,297 ("the '297 patent") (Exhibit 6 hereto), was duly and legally issued on April 25, 2000.

33.     Genentech is the owner of all right, title, and interest in the '297 patent.

34.     The '297 patent has not yet expired.

35.     The '297 patent was included on the list of patents provided by Genentech to Amgen pursuant to 42 U.S.C. § 262(*l*)(3)(A) on March 24, 2017.  The patent also was included on the lists of patents exchanged by Genentech and Amgen pursuant to 42 U.S.C. § 262(*l*)(5).

36.     Amgen has obtained FDA approval under 42 U.S.C. § 262(k) to manufacture, use, offer for sale, and/or sell within the United States, or import into the United States, ABP 215, a biosimilar version of Genentech's Avastin® (bevacizumab) product.

37.     On information and belief based upon Amgen's purported notice of commercial marketing under 42 U.S.C. § 262(*l*)(8)(A), Amgen intends to, and will, offer for sale and/or sell within the United States, or import into the United States, ABP 215 on or about April 2018, which is before the expiration of the '297 patent.  On information and belief based upon Amgen's purported notice of commercial marketing under 42 U.S.C. § 262(*l*)(8)(A), Amgen intends to, and will, manufacture within the United States ABP 215 before April 2018.

38.     The submission of Amgen's aBLA to the FDA to obtain approval to engage in the commercial manufacture, use, offer for sale, and/or sale, or import into the United States, of ABP 215 before the expiration of the '297 patent is an act of infringement of one or more claims of the '297 patent under 35 U.S.C. § 271(e)(2)(C).

39.     For example, the manufacture, use, offer for sale, and/or sale, or import into the United States of ABP 215 will infringe, *inter alia*, claims 29 and 30 of the '297 patent.

40.      Amgen believed, , that biosimilar applicants like Amgen must include all bases for its contentions of non-infringement and invalidity in their 42 U.S.C. § 262(*l*)(3)(B) contentions and cannot legally change those contentions in subsequent litigation.  Amgen knew, understood, and believed that this patent was valid and infringed by Amgen's ABP 215.

41.     Genentech will be irreparably harmed if Amgen is not enjoined from infringing one or more claims of the '297 patent.  Genentech is entitled to injunctive relief under 35 U.S.C.

§ 271(e)(4)(B) preventing Amgen from any further infringement.  Genentech has no adequate

remedy at law.

42.      Amgen's commercial manufacture, use, offer for sale, and/or sale within the

United States, or importation into the United States, of ABP 215 and before the expiration of the

'297 patent will cause Genentech injury, entitling Genentech to damages or other monetary relief

under 35 U.S.C. § 271(e)(4)(C).

## <u>COUNT 2</u>
## <u>(INFRINGEMENT OF THE '428 PATENT)</u>

43.      Plaintiffs incorporate each of the preceding paragraphs 1 through 30 as if fully set

forth herein.

44.      United States Patent No. 6,121,428 ("the '428 patent") (Exhibit 7 hereto), was

duly and legally issued on September 19, 2000.

45.      Genentech is the owner of all right, title, and interest in the '428 patent.

46.      The '428 patent has not yet expired.

47.      The '428 patent was included on the list of patents provided by Genentech to

Amgen pursuant to 42 U.S.C. § 262($l$)(3)(A) on March 24, 2017.  The patent also was included

on the lists of patents exchanged by Genentech and Amgen pursuant to 42 U.S.C. § 262($l$)(5).

48.      Amgen has obtained FDA approval under 42 U.S.C. § 262(k) to manufacture, use,

offer for sale, and/or sell within the United States, or import into the United States, ABP 215, a

biosimilar version of Genentech's Avastin® (bevacizumab) product.

49.      On information and belief based upon Amgen's purported notice of commercial

marketing under 42 U.S.C. § 262($l$)(8)(A), Amgen intends to, and will, offer for sale and/or sell

within the United States, or import into the United States, ABP 215 on or about April 2018,

which is before the expiration of the '428 patent.  On information and belief based upon

14

Amgen's purported notice of commercial marketing under 42 U.S.C. § 262(*l*)(8)(A), Amgen

intends to, and will, manufacture within the United States ABP 215 before April 2018.

50.     The submission of Amgen's aBLA to the FDA to obtain approval to engage in the

commercial manufacture, use, offer for sale, and/or sale, or import into the United States, of ABP

215 before the expiration of the '428 patent is an act of infringement of one or more claims of

the '428 patent under 35 U.S.C. § 271(e)(2)(C).

51.     For example, on information and belief, the purification of ABP 215 drug

substance will infringe, *inter alia*, claim 16 of the '428 patent.

52.     Amgen's ABP 215 aBLA does not disclose all of the information relevant to

establishing whether the manufacture of ABP 215 drug substance will infringe the '428 patent.

Genentech has repeatedly requested that Amgen provide "other information that describes the

process or processes used to manufacture," as required by 42 U.S.C. § 262(*l*)(2)(A). Amgen has

refused, despite purporting to comply with Section (*l*)(2)(A) and seeking to impose obligations

on Genentech under the statute.  Amgen's failure to provide such information under these

circumstances justifies Genentech's contention that manufacturing ABP 215 would infringe the

'428 patent.

53.     ██████████████████████████████████████████████████

████████████████████████████████████████ Amgen believed, █████████████████

███████████████████████████████████████████, that biosimilar applicants like

Amgen must include all bases for its contentions of non-infringement and invalidity in their 42

U.S.C. § 262(*l*)(3)(B) contentions and cannot legally change those contentions in subsequent

litigation.  Amgen knew, understood, and believed that this patent was valid and infringed by

Amgen's ABP 215. ████████████████████████████████████████████

████████████████████████████████████████.

54.     Genentech will be irreparably harmed if Amgen is not enjoined from infringing one or more claims of the '428 patent.  Genentech is entitled to injunctive relief under 35 U.S.C. § 271(e)(4)(B) preventing Amgen from any further infringement.  Genentech has no adequate remedy at law.

55.     Amgen's commercial manufacture, use, offer for sale, and/or sale within the United States, or importation into the United States, of ABP 215 and before the expiration of the '428 patent will cause Genentech injury, entitling Genentech to damages or other monetary relief under 35 U.S.C. § 271(e)(4)(C).

## COUNT 3
## (INFRINGEMENT OF THE '177 PATENT)

56.     Plaintiffs incorporate each of the preceding paragraphs 1 through 30 as if fully set forth herein.

57.     United States Patent No. 6,242,177 ("the '177 patent") (Exhibit 8 hereto), was duly and legally issued on June 5, 2001.

58.     Genentech is the owner of all right, title, and interest in the '177 patent.

59.     The '177 patent has not yet expired.

60.     The '177 patent was included on the list of patents provided by Genentech to Amgen pursuant to 42 U.S.C. § 262(*l*)(3)(A) on March 24, 2017.  The patent also was included on the lists of patents exchanged by Genentech and Amgen pursuant to 42 U.S.C. § 262(*l*)(5).

61.     Amgen has obtained FDA approval under 42 U.S.C. § 262(k) to manufacture, use, offer for sale, and/or sell within the United States, or import into the United States, ABP 215, a biosimilar version of Genentech's Avastin® (bevacizumab) product.

16

62.     On information and belief based upon Amgen's purported notice of commercial marketing under 42 U.S.C. § 262(*l*)(8)(A), Amgen intends to, and will, offer for sale and/or sell within the United States, or import into the United States, ABP 215 on or about April 2018, which is before the expiration of the '177 patent.  On information and belief based upon Amgen's purported notice of commercial marketing under 42 U.S.C. § 262(*l*)(8)(A), Amgen intends to, and will, manufacture within the United States ABP 215 before April 2018.

63.     The submission of Amgen's aBLA to the FDA to obtain approval to engage in the commercial manufacture, use, offer for sale, and/or sale, or import into the United States, of ABP 215 before the expiration of the '177 patent is an act of infringement of one or more claims of the '177 patent under 35 U.S.C. § 271(e)(2)(C).

64.     For example, on information and belief, the manufacture of ABP 215 will infringe, *inter alia*, claim 1 of the '177 patent.

65.     Amgen's ABP 215 aBLA does not disclose all of the information relevant to establishing whether the manufacture of ABP 215 drug substance will infringe the '177 patent. Genentech has repeatedly requested that Amgen provide "other information that describes the process or processes used to manufacture," as required by 42 U.S.C. § 262(*l*)(2)(A). Amgen has refused, despite purporting to comply with Section (*l*)(2)(A) and seeking to impose obligations on Genentech under the statute. Amgen's failure to provide such information under these circumstances justifies Genentech's contention that manufacturing ABP 215 would infringe the '177 patent.

66.     ████████████████████████████████████████

████████████████████████████████ Amgen believed, ███████████████

████████████████████████████████████ that biosimilar applicants like

Amgen must include all bases for its contentions of non-infringement and invalidity in their 42 U.S.C. § 262(*l*)(3)(B) contentions and cannot legally change those contentions in subsequent litigation.  Amgen knew, understood, and believed that this patent was valid and infringed by Amgen's ABP 215. ███████████████████████████

████████████████████████████████████████

67.     Genentech will be irreparably harmed if Amgen is not enjoined from infringing one or more claims of the '177 patent.  Genentech is entitled to injunctive relief under 35 U.S.C. § 271(e)(4)(B) preventing Amgen from any further infringement.  Genentech has no adequate remedy at law.

68.     Amgen's commercial manufacture, use, offer for sale, and/or sale within the United States, or importation into the United States, of ABP 215 and before the expiration of the '177 patent will cause Genentech injury, entitling Genentech to damages or other monetary relief under 35 U.S.C. § 271(e)(4)(C).

## COUNT 4
## (INFRINGEMENT OF THE '415 PATENT)

69.     Plaintiffs incorporate each of the preceding paragraphs 1 through 30 as if fully set forth herein.

70.     United States Patent No. 6,331,415 ("the '415 patent") (Exhibit 9 hereto), was duly and legally issued on Dec. 18, 2001.

71.     Genentech and City of Hope are co-owners of all right, title, and interest in the '415 patent.

72.     The '415 patent has not yet expired.

18

73.     The '415 patent was included on the list of patents provided by Genentech to Amgen pursuant to 42 U.S.C. § 262(*l*)(3)(A) on March 24, 2017.  The patent also was included on the lists of patents exchanged by Genentech and Amgen pursuant to 42 U.S.C. § 262(*l*)(5).

74.     Amgen has obtained FDA approval under 42 U.S.C. § 262(k) to manufacture, use, offer for sale, and/or sell within the United States, or import into the United States, ABP 215, a biosimilar version of Genentech's Avastin® (bevacizumab) product.

75.     On information and belief based upon Amgen's purported notice of commercial marketing under 42 U.S.C. § 262(*l*)(8)(A), Amgen intends to, and will, offer for sale and/or sell within the United States, or import into the United States, ABP 215 on or about April 2018, which is before the expiration of the '415 patent.   On information and belief based upon Amgen's purported notice of commercial marketing under 42 U.S.C. § 262(*l*)(8)(A), Amgen intends to, and will, manufacture within the United States ABP 215 before April 2018.

76.     The submission of Amgen's aBLA to the FDA to obtain approval to engage in the commercial manufacture, use, offer for sale, and/or sale, or import into the United States, of ABP 215 before the expiration of the '415 patent is an act of infringement of one or more claims of the '415 patent under 35 U.S.C. § 271(e)(2)(C).

77.     For example, the manufacture of ABP 215 will infringe, *inter alia,* claims 9, 20, and 33 of the '415 patent.

78.     

.  Amgen believed,

, that biosimilar applicants like Amgen must include all bases for its contentions of non-infringement and invalidity in their 42 U.S.C. § 262(*l*)(3)(B) contentions and cannot legally change those contentions in subsequent

litigation.  Amgen knew, understood, and believed that this patent was valid and infringed by Amgen's ABP 215.  ███████████████████████████████████████████ ███████████████████████████████████████████████.

79.     Genentech will be irreparably harmed if Amgen is not enjoined from infringing one or more claims of the '415 patent.  Genentech is entitled to injunctive relief under 35 U.S.C. § 271(e)(4)(B) preventing Amgen from any further infringement.  Genentech has no adequate remedy at law.

80.     Amgen's commercial manufacture, use, offer for sale, and/or sale within the United States, or importation into the United States, of ABP 215 and before the expiration of the '415 patent will cause Genentech injury, entitling Genentech to damages or other monetary relief under 35 U.S.C. § 271(e)(4)(C).

## COUNT 5
## (INFRINGEMENT OF THE '213 PATENT)

81.     Plaintiffs incorporate each of the preceding paragraphs 1 through 30 as if fully set forth herein.

82.     United States Patent No. 6,407,213 ("the '213 patent") (Exhibit 10 hereto), was duly and legally issued on June 18, 2002. Plaintiffs incorporate each of the preceding paragraphs as if fully set forth herein.

83.     Genentech is the owner of all right, title, and interest in the '213 patent.

84.     The '213 patent has not yet expired.

85.     The '213 patent was included on the list of patents provided by Genentech to Amgen pursuant to 42 U.S.C. § 262(*l*)(3)(A) on March 24, 2017.  The patent also was included on the lists of patents exchanged by Genentech and Amgen pursuant to 42 U.S.C. § 262(*l*)(5).

20

86.     Amgen has obtained FDA approval under 42 U.S.C. § 262(k) to manufacture, use, offer for sale, and/or sell within the United States, or import into the United States, ABP 215, a biosimilar version of Genentech's Avastin® (bevacizumab) product.

87.     On information and belief based upon Amgen's purported notice of commercial marketing under 42 U.S.C. § 262(*l*)(8)(A), Amgen intends to, and will, offer for sale and/or sell within the United States, or import into the United States, ABP 215 on or about April 2018, which is before the expiration of the '213 patent.  On information and belief based upon Amgen's purported notice of commercial marketing under 42 U.S.C. § 262(*l*)(8)(A), Amgen intends to, and will, manufacture within the United States ABP 215 before April 2018.

88.     The submission of Amgen's aBLA to the FDA to obtain approval to engage in the commercial manufacture, use, offer for sale, and/or sale, or import into the United States, of ABP 215 before the expiration of the '213 patent is an act of infringement of one or more claims of the '213 patent under 35 U.S.C. § 271(e)(2)(C).  The factual basis that Amgen's conduct constitutes infringement of one or more claims of this patent is explained in Genentech's (*l*)(3)(C) contentions.

89.     

Amgen believed, that biosimilar applicants like Amgen must include all bases for its contentions of non-infringement in their 42 U.S.C. § 262(*l*)(3)(B) contentions and cannot legally change those contentions in subsequent litigation.  Amgen knew, understood, and believed that this patent was infringed by Amgen's ABP 215.

90.     Genentech will be irreparably harmed if Amgen is not enjoined from infringing one or more claims of the '213 patent.  Genentech is entitled to injunctive relief under 35 U.S.C.

§ 271(e)(4)(B) preventing Amgen from any further infringement.  Genentech has no adequate

remedy at law.

91.     Amgen's commercial manufacture, use, offer for sale, and/or sale within the

United States, or importation into the United States, of ABP 215 and before the expiration of the

'213 patent will cause Genentech injury, entitling Genentech to damages or other monetary relief

under 35 U.S.C. § 271(e)(4)(C).

**COUNT 6**
**(INFRINGEMENT OF THE '335 PATENT)**

92.     Plaintiffs incorporate each of the preceding paragraphs 1 through 30 as if fully set

forth herein.

93.     United States Patent No. 6,417,335 ("the '335 patent") (Exhibit 11 hereto), was

duly and legally issued on July 9, 2002.

94.     Genentech is the owner of all right, title, and interest in the '335 patent.

95.     The '335 patent has not yet expired.

96.     The '335 patent was included on the list of patents provided by Genentech to

Amgen pursuant to 42 U.S.C. § 262(*l*)(3)(A) on March 24, 2017.  The patent also was included

on the lists of patents exchanged by Genentech and Amgen pursuant to 42 U.S.C. § 262(*l*)(5).

97.     Amgen has obtained FDA approval under 42 U.S.C. § 262(k) to manufacture, use,

offer for sale, and/or sell within the United States, or import into the United States, ABP 215, a

biosimilar version of Genentech's Avastin® (bevacizumab) product.

98.     On information and belief based upon Amgen's purported notice of commercial

marketing under 42 U.S.C. § 262(*l*)(8)(A), Amgen intends to, and will, offer for sale and/or sell

within the United States, or import into the United States, ABP 215 on or about April 2018,

which is before the expiration of the '335 patent.   On information and belief based upon

22

Amgen's purported notice of commercial marketing under 42 U.S.C. § 262(*l*)(8)(A), Amgen intends to, and will, manufacture within the United States ABP 215 before April 2018.

99.     The submission of Amgen's aBLA to the FDA to obtain approval to engage in the commercial manufacture, use, offer for sale, and/or sale, or import into the United States, of ABP 215 before the expiration of the '335 patent is an act of infringement of one or more claims of the '335 patent under 35 U.S.C. § 271(e)(2)(C).  The factual basis that Amgen's conduct constitutes infringement of one or more claims of this patent is explained in Genentech's (*l*)(3)(C) contentions.

100.     ███████████████████████████████████████████████

███████████████████████████   Amgen believed, ██████████████████████

███████████████████████   that biosimilar applicants like Amgen must include all bases for its contentions of non-infringement in their 42 U.S.C. § 262(*l*)(3)(B) contentions and cannot legally change those contentions in subsequent litigation.  Amgen knew, understood, and believed that this patent was infringed by Amgen's ABP 215.

101.     Genentech will be irreparably harmed if Amgen is not enjoined from infringing one or more claims of the '335 patent.  Genentech is entitled to injunctive relief under 35 U.S.C. § 271(e)(4)(B) preventing Amgen from any further infringement.  Genentech has no adequate remedy at law.

102.     Amgen's commercial manufacture, use, offer for sale, and/or sale within the United States, or importation into the United States, of ABP 215 and before the expiration of the '335 patent will cause Genentech injury, entitling Genentech to damages or other monetary relief under 35 U.S.C. § 271(e)(4)(C).

## COUNT 7
## (INFRINGEMENT OF THE '206 PATENT)

103.     Plaintiffs incorporate each of the preceding paragraphs 1 through 30 as if fully set

forth herein.

104.     United States Patent No. 6,586,206 ("the '206 patent") (Exhibit 12 hereto), was

duly and legally issued on July 1, 2003.

105.     Genentech is the owner of all right, title, and interest in the '206 patent.

106.     The '206 patent has not yet expired.

107.     The '206 patent was included on the list of patents provided by Genentech to

Amgen pursuant to 42 U.S.C. § 262(*l*)(3)(A) on March 24, 2017.  The patent also was included

on the lists of patents exchanged by Genentech and Amgen pursuant to 42 U.S.C. § 262(*l*)(5).

108.     Amgen has obtained FDA approval under 42 U.S.C. § 262(k) to manufacture, use,

offer for sale, and/or sell within the United States, or import into the United States, ABP 215, a

biosimilar version of Genentech's Avastin® (bevacizumab) product.

109.     On information and belief based upon Amgen's purported notice of commercial

marketing under 42 U.S.C. § 262(*l*)(8)(A), ███████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

110.     The submission of Amgen's aBLA to the FDA to obtain approval to engage in the

commercial manufacture, use, offer for sale, and/or sale, or import into the United States, of ABP

215 before the expiration of the '206 patent is an act of infringement of one or more claims of

the '206 patent under 35 U.S.C. § 271(e)(2)(C).  The factual basis that Amgen's conduct

constitutes infringement of one or more claims of this patent is explained in Genentech's (*l*)(3)(C) contentions.

111.    Genentech will be irreparably harmed if Amgen is not enjoined from infringing one or more claims of the '206 patent.  Genentech is entitled to injunctive relief under 35 U.S.C. § 271(e)(4)(B) preventing Amgen from any further infringement.  Genentech has no adequate remedy at law.

112.    Amgen's commercial manufacture, use, offer for sale, and/or sale within the United States, or importation into the United States, of ABP 215 and before the expiration of the '206 patent will cause Genentech injury, entitling Genentech to damages or other monetary relief under 35 U.S.C. § 271(e)(4)(C).

## COUNT 8
## (INFRINGEMENT OF THE '918 PATENT)

113.    Plaintiffs incorporate each of the preceding paragraphs 1 through 30 as if fully set forth herein.

114.    United States Patent No. 6,620,918 ("the '918 patent") (Exhibit 13 hereto), was duly and legally issued on Sept. 16, 2003.

115.    Genentech is the owner of all right, title, and interest in the '918 patent.

116.    The '918 patent has not yet expired.

117.    The '918 patent was included on the list of patents provided by Genentech to Amgen pursuant to 42 U.S.C. § 262(*l*)(3)(A) on March 24, 2017.  The patent also was included on the lists of patents exchanged by Genentech and Amgen pursuant to 42 U.S.C. § 262(*l*)(5).

118.    Amgen has obtained FDA approval under 42 U.S.C. § 262(k) to manufacture, use, offer for sale, and/or sell within the United States, or import into the United States, ABP 215, a biosimilar version of Genentech's Avastin® (bevacizumab) product.

25

119.    On information and belief based upon Amgen's purported notice of commercial marketing under 42 U.S.C. § 262(*l*)(8)(A), Amgen intends to, and will, offer for sale and/or sell within the United States, or import into the United States, ABP 215 on or about April 2018, which is before the expiration of the '918 patent.   On information and belief based upon Amgen's purported notice of commercial marketing under 42 U.S.C. § 262(*l*)(8)(A), Amgen intends to, and will, manufacture within the United States ABP 215 before April 2018.

120.    The submission of Amgen's aBLA to the FDA to obtain approval to engage in the commercial manufacture, use, offer for sale, and/or sale, or import into the United States, of ABP 215 before the expiration of the '918 patent is an act of infringement of one or more claims of the '918 patent under 35 U.S.C. § 271(e)(2)(C).  The factual basis that Amgen's conduct constitutes infringement of one or more claims of this patent is explained in Genentech's (*l*)(3)(C) contentions.

121.    Genentech will be irreparably harmed if Amgen is not enjoined from infringing one or more claims of the '918 patent.  Genentech is entitled to injunctive relief under 35 U.S.C. § 271(e)(4)(B) preventing Amgen from any further infringement.  Genentech has no adequate remedy at law.

122.    Amgen's commercial manufacture, use, offer for sale, and/or sale within the United States, or importation into the United States, of ABP 215 and before the expiration of the '918 patent will cause Genentech injury, entitling Genentech to damages or other monetary relief under 35 U.S.C. § 271(e)(4)(C).

## COUNT 9
## (INFRINGEMENT OF THE '034 PATENT)

123.    Plaintiffs incorporate each of the preceding paragraphs 1 through 30 as if fully set forth herein.

26

124.    United States Patent No. 6,870,034 ("the '034 patent") (Exhibit 14 hereto), was duly and legally issued on March 22, 2005.

125.    Genentech is the owner of all right, title, and interest in the '034 patent.

126.    The '034 patent has not yet expired.

127.    The '034 patent was included on the list of patents provided by Genentech to Amgen pursuant to 42 U.S.C. § 262(*l*)(3)(A) on March 24, 2017.  The patent also was included on the lists of patents exchanged by Genentech and Amgen pursuant to 42 U.S.C. § 262(*l*)(5).

128.    Amgen has obtained FDA approval under 42 U.S.C. § 262(k) to manufacture, use, offer for sale, and/or sell within the United States, or import into the United States, ABP 215, a biosimilar version of Genentech's Avastin® (bevacizumab) product.

129.    On information and belief based upon Amgen's purported notice of commercial marketing under 42 U.S.C. § 262(*l*)(8)(A), Amgen intends to, and will, offer for sale and/or sell within the United States, or import into the United States, ABP 215 on or about April 2018, which is before the expiration of the '034 patent.   On information and belief based upon Amgen's purported notice of commercial marketing under 42 U.S.C. § 262(*l*)(8)(A), Amgen intends to, and will, manufacture within the United States ABP 215 before April 2018.

130.    The submission of Amgen's aBLA to the FDA to obtain approval to engage in the commercial manufacture, use, offer for sale, and/or sale, or import into the United States, of ABP 215 before the expiration of the '034 patent is an act of infringement of one or more claims of the '034 patent under 35 U.S.C. § 271(e)(2)(C).  The factual basis that Amgen's conduct constitutes infringement of one or more claims of this patent is explained in Genentech's (*l*)(3)(C) contentions.

131.     Genentech will be irreparably harmed if Amgen is not enjoined from infringing one or more claims of the '034 patent.  Genentech is entitled to injunctive relief under 35 U.S.C. § 271(e)(4)(B) preventing Amgen from any further infringement.  Genentech has no adequate remedy at law.

132.     Amgen's commercial manufacture, use, offer for sale, and/or sale within the United States, or importation into the United States, of ABP 215 and before the expiration of the '034 patent will cause Genentech injury, entitling Genentech to damages or other monetary relief under 35 U.S.C. § 271(e)(4)(C).

## COUNT 10
## (INFRINGEMENT OF THE '879 PATENT)

133.     Plaintiffs incorporate each of the preceding paragraphs 1 through 30 as if fully set forth herein.

134.     United States Patent No. 6,884,879 ("the '879 patent") (Exhibit 15 hereto), was duly and legally issued on April 26, 2005.

135.     Genentech is the owner of all right, title, and interest in the '879 patent.

136.     The '879 patent was included on the list of patents provided by Genentech to Amgen pursuant to 42 U.S.C. § 262(*l*)(3)(A) on March 24, 2017.  The patent also was included on the lists of patents exchanged by Genentech and Amgen pursuant to 42 U.S.C. § 262(*l*)(5).

137.     Amgen has obtained FDA approval under 42 U.S.C. § 262(k) to manufacture, use, offer for sale, and/or sell within the United States, or import into the United States, ABP 215, a biosimilar version of Genentech's Avastin® (bevacizumab) product.

138.     The submission of Amgen's aBLA to the FDA to obtain approval to engage in the commercial manufacture, use, offer for sale, and/or sale, or import into the United States, of ABP

215 before the expiration of the '879 patent is an act of infringement of one or more claims of the '879 patent under 35 U.S.C. § 271(e)(2)(C).

139. For example, the manufacture of ABP 215 infringed, *inter alia*, claim 1 of the '879 patent.

140. Amgen's commercial manufacture, use, offer for sale, and/or sale within the United States, or importation into the United States, of ABP 215 and before the expiration of the '879 patent will cause Genentech injury, entitling Genentech to damages or other monetary relief under 35 U.S.C. § 271(e)(4)(C).

141. ████████████████████████████████████████████████████ ████████████████████████████████████████ Amgen believed, ███████████ ███████████████████████████████████████████ that biosimilar applicants like Amgen must include all bases for its contentions of non-infringement and invalidity in their 42 U.S.C. § 262(*l*)(3)(B) contentions and cannot legally change those contentions in subsequent litigation.  Amgen knew, understood, and believed that this patent was valid and infringed by Amgen's ABP 215.

## COUNT 11
## (INFRINGEMENT OF THE '269 PATENT)

142. Plaintiffs incorporate each of the preceding paragraphs 1 through 30 as if fully set forth herein.

143. United States Patent No. 7,060,269 ("the '269 patent") (Exhibit 16 hereto), was duly and legally issued on June 13, 2006.

144. Genentech is the owner of all right, title, and interest in the '269 patent.

145. The '269 patent has not yet expired.

146.    The '269 patent was included on the list of patents provided by Genentech to Amgen pursuant to 42 U.S.C. § 262(*l*)(3)(A) on March 24, 2017.  The patent also was included on the lists of patents exchanged by Genentech and Amgen pursuant to 42 U.S.C. § 262(*l*)(5).

147.    Amgen has obtained FDA approval under 42 U.S.C. § 262(k) to manufacture, use, offer for sale, and/or sell within the United States, or import into the United States, ABP 215, a biosimilar version of Genentech's Avastin® (bevacizumab) product.

148.    On information and belief based upon Amgen's purported notice of commercial marketing under 42 U.S.C. § 262(*l*)(8)(A), Amgen intends to, and will, offer for sale and/or sell within the United States, or import into the United States, ABP 215 on or about April 2018, which is before the expiration of the '269 patent.   On information and belief based upon Amgen's purported notice of commercial marketing under 42 U.S.C. § 262(*l*)(8)(A), Amgen intends to, and will, manufacture within the United States ABP 215 before April 2018.

149.    The submission of Amgen's aBLA to the FDA to obtain approval to engage in the commercial manufacture, use, offer for sale, and/or sale, or import into the United States, of ABP 215 before the expiration of the '269 patent is an act of infringement of one or more claims of the '269 patent under 35 U.S.C. § 271(e)(2)(C).  The factual basis that Amgen's conduct constitutes infringement of one or more claims of this patent is explained in Genentech's (*l*)(3)(C) contentions.

150.    ██████████████████████████████████████████ ██████████████████████████████ Amgen believed, ████████████ ██████████████████████████████ that biosimilar applicants like Amgen must include all bases for its contentions of non-infringement in their 42 U.S.C. § 262(*l*)(3)(B) contentions

and cannot legally change those contentions in subsequent litigation.  Amgen knew, understood, and believed that this patent was infringed by Amgen's ABP 215.

151.    On information and belief, the use of MVASI as described in Amgen's MVASI Label[3] will encourage, suggest, teach, and/or induce the product's use as claimed in the '269 patent.

152.    On information and belief, Amgen plans and intends to, and will, actively induce infringement of the '269 patent when it begins commercial marketing of MVASI.

153.    On information and belief, Amgen knows that MVASI and its proposed labeling are especially made or adapted for use in infringing the '269 patent, and that MVASI and its proposed labeling are not suitable for substantial noninfringing use.  On information and belief, Amgen plans and intends to, and will, contribute to infringement of the '269 patent when it begins commercial marketing of MVASI.

154.    The foregoing actions by Amgen and the submission of Amgen's aBLA to the FDA to obtain approval to engage in the commercial manufacture, use, offer for sale, and/or sale, or import into the United States, of ABP 215 before the expiration of the '269 patent constitute infringement of '269 patent under 35 U.S.C. § 271(e)(2)(C), active inducement of infringement of the '269 patent under 35 U.S.C. § 271(b), and contribution to the infringement by others of the '269 patent under 35 U.S.C. § 271(c).

155.    Genentech will be irreparably harmed if Amgen is not enjoined from infringing one or more claims of the '269 patent.  Genentech is entitled to injunctive relief under 35 U.S.C.

---

[3] Available at:  https://www.accessdata.fda.gov/drugsatfda_docs/label/2017/761028s000lbl.pdf ("MVASI Label").

§ 271(e)(4)(B) preventing Amgen from any further infringement.  Genentech has no adequate remedy at law.

156.    Amgen's commercial manufacture, use, offer for sale, and/or sale within the United States, or importation into the United States, of ABP 215 and before the expiration of the '269 patent will cause Genentech injury, entitling Genentech to damages or other monetary relief under 35 U.S.C. § 271(e)(4)(C).

## COUNT 12
## (INFRINGEMENT OF THE '901 PATENT)

157.    Plaintiffs incorporate each of the preceding paragraphs 1 through 30 as if fully set forth herein.

158.    United States Patent No. 7,169,901 ("the '901 patent") (Exhibit 17 hereto), was duly and legally issued on Jan. 30, 2007.

159.    Genentech is the owner of all right, title, and interest in the '901 patent.

160.    The '901 patent has not yet expired.

161.    The '901 patent was included on the list of patents provided by Genentech to Amgen pursuant to 42 U.S.C. § 262($l$)(3)(A) on March 24, 2017.  The patent also was included on the lists of patents exchanged by Genentech and Amgen pursuant to 42 U.S.C. § 262($l$)(5).

162.    Amgen has obtained FDA approval under 42 U.S.C. § 262(k) to manufacture, use, offer for sale, and/or sell within the United States, or import into the United States, ABP 215, a biosimilar version of Genentech's Avastin® (bevacizumab) product.

163.    On information and belief based upon Amgen's purported notice of commercial marketing under 42 U.S.C. § 262($l$)(8)(A), Amgen intends to, and will, offer for sale and/or sell within the United States, or import into the United States, ABP 215 on or about April 2018, which is before the expiration of the '901 patent.   On information and belief based upon

Amgen's purported notice of commercial marketing under 42 U.S.C. § 262(*l*)(8)(A), Amgen intends to, and will, manufacture within the United States ABP 215 before April 2018.

164.    The submission of Amgen's aBLA to the FDA to obtain approval to engage in the commercial manufacture, use, offer for sale, and/or sale, or import into the United States, of ABP 215 before the expiration of the '901 patent is an act of infringement of one or more claims of the '901 patent under 35 U.S.C. § 271(e)(2)(C).  The factual basis that Amgen's conduct constitutes infringement of one or more claims of this patent is explained in Genentech's (*l*)(3)(C) contentions.

165.    ███████████████████████████████████████████

███████████████████████████  Amgen believed, ████████████████████████

████████████████████████  that biosimilar applicants like Amgen must include all bases for its contentions of non-infringement in their 42 U.S.C. § 262(*l*)(3)(B) contentions and cannot legally change those contentions in subsequent litigation.  Amgen knew, understood, and believed that this patent was infringed by Amgen's ABP 215.  Genentech will be irreparably harmed if Amgen is not enjoined from infringing one or more claims of the '901 patent.  Genentech is entitled to injunctive relief under 35 U.S.C. § 271(e)(4)(B) preventing Amgen from any further infringement.  Genentech has no adequate remedy at law.

166.    Amgen's commercial manufacture, use, offer for sale, and/or sale within the United States, or importation into the United States, of ABP 215 and before the expiration of the '901 patent will cause Genentech injury, entitling Genentech to damages or other monetary relief under 35 U.S.C. § 271(e)(4)(C).

## COUNT 13
## (INFRINGEMENT OF THE '334 PATENT)

167.     Plaintiffs incorporate each of the preceding paragraphs 1 through 30 as if fully set forth herein.

168.     United States Patent No. 7,297,334 ("the '334 patent") (Exhibit 18 hereto), was duly and legally issued on November 20, 2007.

169.     Genentech is the owner of all right, title, and interest in the '334 patent.

170.     The '334 patent was included on the list of patents provided by Genentech to Amgen pursuant to 42 U.S.C. § 262(*l*)(3)(A) on March 24, 2017.  The patent also was included on the lists of patents exchanged by Genentech and Amgen pursuant to 42 U.S.C. § 262(*l*)(5).

171.     Amgen has obtained FDA approval under 42 U.S.C. § 262(k) to manufacture, use, offer for sale, and/or sell within the United States, or import into the United States, ABP 215, a biosimilar version of Genentech's Avastin® (bevacizumab) product.

172.     The submission of Amgen's aBLA to the FDA to obtain approval to engage in the commercial manufacture, use, offer for sale, and/or sale, or import into the United States, of ABP 215 before the expiration of the '334 patent is an act of infringement of one or more claims of the '334 patent under 35 U.S.C. § 271(e)(2)(C).

173.     On information and belief, the use of MVASI as described in Amgen's MVASI Label will encourage, suggest, teach, and/or induce the product's use as claimed in the '334 patent.

174.     On information and belief, Amgen knows that MVASI and its proposed labeling are especially made or adapted for use in infringing the '901 patent, and that MVASI and its proposed labeling are not suitable for substantial noninfringing use.

34

175.    The submission of Amgen's aBLA to the FDA to obtain approval to engage in the commercial manufacture, use, offer for sale, and/or sale, or import into the United States, of ABP 215 before the expiration of the '334 patent entitles Genentech to fees under 35 U.S.C. § 271(e)(4).

176.    . Amgen believed, that biosimilar applicants like Amgen must include all bases for its contentions of non-infringement and invalidity in their 42 U.S.C. § 262(*l*)(3)(B) contentions and cannot legally change those contentions in subsequent litigation.  Amgen knew, understood, and believed that this patent was valid and infringed by Amgen's ABP 215.

## COUNT 14
## (INFRINGEMENT OF THE '193 PATENT)

177.    Plaintiffs incorporate each of the preceding paragraphs 1 through 30 as if fully set forth herein.

178.    United States Patent No. 7,375,193 ("the '193 patent") (Exhibit 19 hereto), was duly and legally issued on May 20, 2008.

179.    Genentech is the owner of all right, title, and interest in the '193 patent.

180.    The '193 patent was included on the list of patents provided by Genentech to Amgen pursuant to 42 U.S.C. § 262(*l*)(3)(A) on March 24, 2017.  The patent also was included on the lists of patents exchanged by Genentech and Amgen pursuant to 42 U.S.C. § 262(*l*)(5).

181.    Amgen has obtained FDA approval under 42 U.S.C. § 262(k) to manufacture, use, offer for sale, and/or sell within the United States, or import into the United States, ABP 215, a biosimilar version of Genentech's Avastin® (bevacizumab) product.

182.    The submission of Amgen's aBLA to the FDA to obtain approval to engage in the commercial manufacture, use, offer for sale, and/or sale, or import into the United States, of ABP 215 before the expiration of the '193 patent is an act of infringement of one or more claims of the '193 patent under 35 U.S.C. § 271(e)(2)(C).

183.    For example, manufacture, use, offer for sale, and/or sale, or import into the United States, of ABP 215 will infringe, *inter alia*, claim 1 of the '193 patent.

184.    The submission of Amgen's aBLA to the FDA to obtain approval to engage in the commercial manufacture, use, offer for sale, and/or sale, or import into the United States, of ABP 215 before the expiration of the '193 patent entitles Genentech to fees under 35 U.S.C. § 271(e)(4).

185.    ███████████████████████████████████████████ Amgen believed, █████████████ ████████████████████████████████████ that biosimilar applicants like Amgen must include all bases for its contentions of non-infringement and invalidity in their 42 U.S.C. § 262(*l*)(3)(B) contentions and cannot legally change those contentions in subsequent litigation.  Amgen knew, understood, and believed that this patent was valid and infringed by Amgen's ABP 215.

## COUNT 15
## (INFRINGEMENT OF THE '115 PATENT)

186.    Plaintiffs incorporate each of the preceding paragraphs 1 through 30 as if fully set forth herein.

187.    United States Patent No. 7,622,115 ("the '115 patent") (Exhibit 20 hereto), was duly and legally issued on Nov. 24, 2009.

188.    Genentech is the owner of all right, title, and interest in the '115 patent.

36

189.    The '115 patent has not yet expired.

190.    The '115 patent was included on the list of patents provided by Genentech to Amgen pursuant to 42 U.S.C. § 262(*l*)(3)(A) on March 24, 2017.  The patent also was included on the lists of patents exchanged by Genentech and Amgen pursuant to 42 U.S.C. § 262(*l*)(5).

191.    Amgen has obtained FDA approval under 42 U.S.C. § 262(k) to manufacture, use, offer for sale, and/or sell within the United States, or import into the United States, ABP 215, a biosimilar version of Genentech's Avastin® (bevacizumab) product.

192.    On information and belief based upon Amgen's purported notice of commercial marketing under 42 U.S.C. § 262(*l*)(8)(A), Amgen intends to, and will, offer for sale and/or sell within the United States, or import into the United States, ABP 215 on or about April 2018, which is before the expiration of the '115 patent.   On information and belief based upon Amgen's purported notice of commercial marketing under 42 U.S.C. § 262(*l*)(8)(A), Amgen intends to, and will, manufacture within the United States ABP 215 before April 2018.

193.    The submission of Amgen's aBLA to the FDA to obtain approval to engage in the commercial manufacture, use, offer for sale, and/or sale, or import into the United States, of ABP 215 before the expiration of the '115 patent is an act of infringement of one or more claims of the '115 patent under 35 U.S.C. § 271(e)(2)(C).  The factual basis that Amgen's conduct constitutes infringement of one or more claims of this patent is explained in Genentech's (*l*)(3)(C) contentions.

194.    On information and belief, the use of MVASI as described in Amgen's MVASI Label will encourage, suggest, teach, and/or induce the product's use  as claimed in the '115 patent.

195.    On information and belief, Amgen plans and intends to, and will, actively induce infringement of the '115 patent when it begins commercial marketing of MVASI.

196.    On information and belief, Amgen knows that MVASI and its proposed labeling are especially made or adapted for use in infringing the '115 patent, and that MVASI and its proposed labeling are not suitable for substantial noninfringing use.  On information and belief, Amgen plans and intends to, and will, contribute to infringement of the '115 patent when it begins commercial marketing of MVASI.

197.    The foregoing actions by Amgen and the submission of Amgen's aBLA to the FDA to obtain approval to engage in the commercial manufacture, use, offer for sale, and/or sale, or import into the United States, of ABP 215 before the expiration of the '115 patent constitute infringement of the '115 patent under 35 U.S.C. § 271(e)(2)(C), active inducement of infringement of the '115 patent under 35 U.S.C. § 271(b), and contribution to the infringement by others of the '115 patent under 35 U.S.C. § 271(c).

198.    Genentech will be irreparably harmed if Amgen is not enjoined from infringing one or more claims of the '115 patent.  Genentech is entitled to injunctive relief under 35 U.S.C. § 271(e)(4)(B) preventing Amgen from any further infringement.  Genentech has no adequate remedy at law.

199.    Amgen's commercial manufacture, use, offer for sale, and/or sale within the United States, or importation into the United States, of ABP 215 and before the expiration of the '115 patent will cause Genentech injury, entitling Genentech to damages or other monetary relief under 35 U.S.C. § 271(e)(4)(C).

## COUNT 16
## (INFRINGEMENT OF THE '799 PATENT)

200.    Plaintiffs incorporate each of the preceding paragraphs 1 through 30 as if fully set forth herein.

201.    United States Patent No. 7,807,799 ("the '799 patent") (Exhibit 21 hereto), was duly and legally issued on Oct. 5, 2010.

202.    Genentech is the owner of all right, title, and interest in the '799 patent.

203.    The '799 patent has not yet expired.

204.    The '799 patent was included on the list of patents provided by Genentech to Amgen pursuant to 42 U.S.C. § 262(*l*)(3)(A) on March 24, 2017.  The patent also was included on the lists of patents exchanged by Genentech and Amgen pursuant to 42 U.S.C. § 262(*l*)(5).

205.    Amgen has obtained FDA approval under 42 U.S.C. § 262(k) to manufacture, use, offer for sale, and/or sell within the United States, or import into the United States, ABP 215, a biosimilar version of Genentech's Avastin® (bevacizumab) product.

206.    On information and belief based upon Amgen's purported notice of commercial marketing under 42 U.S.C. § 262(*l*)(8)(A), Amgen intends to, and will, offer for sale and/or sell within the United States, or import into the United States, ABP 215 on or about April 2018, which is before the expiration of the '799 patent.   On information and belief based upon Amgen's purported notice of commercial marketing under 42 U.S.C. § 262(*l*)(8)(A), Amgen intends to, and will, manufacture within the United States ABP 215 before April 2018.

207.    The submission of Amgen's aBLA to the FDA to obtain approval to engage in the commercial manufacture, use, offer for sale, and/or sale, or import into the United States, of ABP 215 before the expiration of the '799 patent is an act of infringement of one or more claims of the '799 patent under 35 U.S.C. § 271(e)(2)(C).  The factual basis that Amgen's conduct

39

constitutes infringement of one or more claims of this patent is explained in Genentech's

($l$)(3)(C) contentions.

208.     Genentech will be irreparably harmed if Amgen is not enjoined from infringing

one or more claims of the '799 patent.  Genentech is entitled to injunctive relief under 35 U.S.C.

§ 271(e)(4)(B) preventing Amgen from any further infringement.  Genentech has no adequate

remedy at law.

209.     Amgen's commercial manufacture, use, offer for sale, and/or sale within the

United States, or importation into the United States, of ABP 215 and before the expiration of the

'799 patent will cause Genentech injury, entitling Genentech to damages or other monetary relief

under 35 U.S.C. § 271(e)(4)(C).

**COUNT 17**
**(INFRINGEMENT OF THE '221 PATENT)**

210.     Plaintiffs incorporate each of the preceding paragraphs 1 through 30 as if fully set

forth herein.

211.     United States Patent No. 7,923,221 ("the '221 patent") (Exhibit 22 hereto), was

duly and legally issued on April 12, 2011.

212.     Genentech and City of Hope are co-owners of all right, title, and interest in the

'221 patent.

213.     The '221 patent has not yet expired.

214.     The '221 patent was included on the list of patents provided by Genentech to

Amgen pursuant to 42 U.S.C. § 262($l$)(3)(A) on March 24, 2017.  The patent also was included

on the lists of patents exchanged by Genentech and Amgen pursuant to 42 U.S.C. § 262($l$)(5).

40

215.   Amgen has obtained FDA approval under 42 U.S.C. § 262(k) to manufacture, use, offer for sale, and/or sell within the United States, or import into the United States, ABP 215, a biosimilar version of Genentech's Avastin® (bevacizumab) product.

216.   On information and belief based upon Amgen's purported notice of commercial marketing under 42 U.S.C. § 262(*l*)(8)(A), Amgen intends to, and will, offer for sale and/or sell within the United States, or import into the United States, ABP 215 on or about April 2018, which is before the expiration of the '221 patent.   On information and belief based upon Amgen's purported notice of commercial marketing under 42 U.S.C. § 262(*l*)(8)(A), Amgen intends to, and will, manufacture within the United States ABP 215 before April 2018.

217.   The submission of Amgen's aBLA to the FDA to obtain approval to engage in the commercial manufacture, use, offer for sale, and/or sale, or import into the United States, of ABP 215 before the expiration of the '221 patent is an act of infringement of one or more claims of the '221 patent under 35 U.S.C. § 271(e)(2)(C).

218.   For example, the manufacture of ABP 215 will infringe, inter alia, claims 11, 15, 21, 24, 34 and 43 of the '221 patent.

219.   ██████████████████████████████████████████████████████████████████████ ██████████████████████████████████████Amgen believed,██████████████████████ ████████████████████████████████████████████that biosimilar applicants like Amgen must include all bases for its contentions of non-infringement and invalidity in their 42 U.S.C. § 262(*l*)(3)(B) contentions and cannot legally change those contentions in subsequent litigation.   Amgen knew, understood, and believed that this patent was valid and infringed by Amgen's ABP 215.   ███████████████████████████████████████████████████ ████████████████████████████████████████████████████

220.    Genentech will be irreparably harmed if Amgen is not enjoined from infringing one or more claims of the '221 patent.  Genentech is entitled to injunctive relief under 35 U.S.C. § 271(e)(4)(B) preventing Amgen from any further infringement.  Genentech has no adequate remedy at law.

221.    Amgen's commercial manufacture, use, offer for sale, and/or sale within the United States, or importation into the United States, of ABP 215 and before the expiration of the '221 patent will cause Genentech injury, entitling Genentech to damages or other monetary relief under 35 U.S.C. § 271(e)(4)(C).

## COUNT 18
## (INFRINGEMENT OF THE '017 PATENT)

222.    Plaintiffs incorporate each of the preceding paragraphs 1 through 30 as if fully set forth herein.

223.    United States Patent No. 8,044,017 ("the '017 patent") (Exhibit 23 hereto), was duly and legally issued on Oct. 25, 2011.

224.    Genentech is the owner of all right, title, and interest in the '017 patent.

225.    The '017 patent has not yet expired.

226.    The '017 patent was included on the list of patents provided by Genentech to Amgen pursuant to 42 U.S.C. § 262(*l*)(3)(A) on March 24, 2017.  The patent also was included on the lists of patents exchanged by Genentech and Amgen pursuant to 42 U.S.C. § 262(*l*)(5).

227.    Amgen has obtained FDA approval under 42 U.S.C. § 262(k) to manufacture, use, offer for sale, and/or sell within the United States, or import into the United States, ABP 215, a biosimilar version of Genentech's Avastin® (bevacizumab) product.

228.    On information and belief based upon Amgen's purported notice of commercial marketing under 42 U.S.C. § 262(*l*)(8)(A), Amgen intends to, and will, offer for sale and/or sell

42

within the United States, or import into the United States, ABP 215 on or about April 2018, which is before the expiration of the '017 patent.   On information and belief based upon Amgen's purported notice of commercial marketing under 42 U.S.C. § 262(*l*)(8)(A), Amgen intends to, and will, manufacture within the United States ABP 215 before April 2018.

229.     The submission of Amgen's aBLA to the FDA to obtain approval to engage in the commercial manufacture, use, offer for sale, and/or sale, or import into the United States, of ABP 215 before the expiration of the '017 patent is an act of infringement of one or more claims of the '017 patent under 35 U.S.C. § 271(e)(2)(C).   The factual basis that Amgen's conduct constitutes infringement of one or more claims of this patent is explained in Genentech's (*l*)(3)(C) contentions.

230.     Genentech will be irreparably harmed if Amgen is not enjoined from infringing one or more claims of the '017 patent.   Genentech is entitled to injunctive relief under 35 U.S.C. § 271(e)(4)(B) preventing Amgen from any further infringement.   Genentech has no adequate remedy at law.

231.     Amgen's commercial manufacture, use, offer for sale, and/or sale within the United States, or importation into the United States, of ABP 215 and before the expiration of the '017 patent will cause Genentech injury, entitling Genentech to damages or other monetary relief under 35 U.S.C. § 271(e)(4)(C).

## COUNT 19
## (INFRINGEMENT OF THE '895 PATENT)

232.     Plaintiffs incorporate each of the preceding paragraphs 1 through 30 as if fully set forth herein.

233.     United States Patent No. 8,460,895 ("the '895 patent") (Exhibit 24 hereto), was duly and legally issued on June 11, 2013.

43

234.     Hoffmann-La Roche, Inc. is the owner of the '895 patent; Genentech is the exclusive licensee of the '895 patent with the sole right to enforce it pursuant to a Patent Licensing Agreement between Genentech and Hoffmann-La Roche, Inc. dated January 13, 2017.

235.     The '895 patent has not yet expired.

236.     The '895 patent was included on the list of patents provided by Genentech to Amgen pursuant to 42 U.S.C. § 262(*l*)(3)(A) on March 24, 2017.  The patent also was included on the lists of patents exchanged by Genentech and Amgen pursuant to 42 U.S.C. § 262(*l*)(5).

237.     Amgen has obtained FDA approval under 42 U.S.C. § 262(k) to manufacture, use, offer for sale, and/or sell within the United States, or import into the United States, ABP 215, a biosimilar version of Genentech's Avastin® (bevacizumab) product.

238.     On information and belief based upon Amgen's purported notice of commercial marketing under 42 U.S.C. § 262(*l*)(8)(A), Amgen intends to, and will, offer for sale and/or sell within the United States, or import into the United States, ABP 215 on or about April 2018, which is before the expiration of the '895 patent.   On information and belief based upon Amgen's purported notice of commercial marketing under 42 U.S.C. § 262(*l*)(8)(A), Amgen intends to, and will, manufacture within the United States ABP 215 before April 2018.

239.     The submission of Amgen's aBLA to the FDA to obtain approval to engage in the commercial manufacture, use, offer for sale, and/or sale, or import into the United States, of ABP 215 before the expiration of the '895 patent is an act of infringement of one or more claims of the '895 patent under 35 U.S.C. § 271(e)(2)(C).  The factual basis that Amgen's conduct constitutes infringement of one or more claims of this patent is explained in Genentech's (*l*)(3)(C) contentions.

44

240. Genentech will be irreparably harmed if Amgen is not enjoined from infringing one or more claims of the '895 patent. Genentech is entitled to injunctive relief under 35 U.S.C. § 271(e)(4)(B) preventing Amgen from any further infringement. Genentech has no adequate remedy at law.

241. Amgen's commercial manufacture, use, offer for sale, and/or sale within the United States, or importation into the United States, of ABP 215 and before the expiration of the '895 patent will cause Genentech injury, entitling Genentech to damages or other monetary relief under 35 U.S.C. § 271(e)(4)(C).

## COUNT 20
## (INFRINGEMENT OF THE '983 PATENT)

242. Plaintiffs incorporate each of the preceding paragraphs 1 through 30 as if fully set forth herein.

243. United States Patent No. 8,512,983 ("the '983 patent") (Exhibit 25 hereto), was duly and legally issued on Aug. 20, 2013.

244. The '983 patent has not yet expired.

245. The '983 patent was included on the list of patents provided by Genentech to Amgen pursuant to 42 U.S.C. § 262(*l*)(3)(A) on March 24, 2017. The patent also was included on the lists of patents exchanged by Genentech and Amgen pursuant to 42 U.S.C. § 262(*l*)(5).

246. Amgen has obtained FDA approval under 42 U.S.C. § 262(k) to manufacture, use, offer for sale, and/or sell within the United States, or import into the United States, ABP 215, a biosimilar version of Genentech's Avastin® (bevacizumab) product.

247. On information and belief based upon Amgen's purported notice of commercial marketing under 42 U.S.C. § 262(*l*)(8)(A), Amgen intends to, and will, offer for sale and/or sell within the United States, or import into the United States, ABP 215 on or about April 2018,

45

which is before the expiration of the '983 patent.   On information and belief based upon

Amgen's purported notice of commercial marketing under 42 U.S.C. § 262(*l*)(8)(A), Amgen

intends to, and will, manufacture within the United States ABP 215 before April 2018.

248.    The submission of Amgen's aBLA to the FDA to obtain approval to engage in the

commercial manufacture, use, offer for sale, and/or sale, or import into the United States, of ABP

215 before the expiration of the '983 patent is an act of infringement of one or more claims of

the '983 patent under 35 U.S.C. § 271(e)(2)(C).   The factual basis that Amgen's conduct

constitutes infringement of one or more claims of this patent is explained in Genentech's

(*l*)(3)(C) contentions.

249.    Genentech will be irreparably harmed if Amgen is not enjoined from infringing

one or more claims of the '983 patent.   Genentech is entitled to injunctive relief under 35 U.S.C.

§ 271(e)(4)(B) preventing Amgen from any further infringement.   Genentech has no adequate

remedy at law.

250.    Amgen's commercial manufacture, use, offer for sale, and/or sale within the

United States, or importation into the United States, of ABP 215 and before the expiration of the

'983 patent will cause Genentech injury, entitling Genentech to damages or other monetary relief

under 35 U.S.C. § 271(e)(4)(C).

## COUNT 21
## (INFRINGEMENT OF THE '869 PATENT)

251.    Plaintiffs incorporate each of the preceding paragraphs 1 through 30 as if fully set

forth herein.

252.    United States Patent No. 8,574,869 ("the '869 patent") (Exhibit 26 hereto), was

duly and legally issued on Nov. 5, 2013.

253.    Genentech is the owner of all right, title, and interest in the '869 patent.

46

254.    The '869 patent has not yet expired.

255.    The '869 patent was included on the list of patents provided by Genentech to Amgen pursuant to 42 U.S.C. § 262(l)(3)(A) on March 24, 2017.  The patent also was included on the lists of patents exchanged by Genentech and Amgen pursuant to 42 U.S.C. § 262(l)(5).

256.    Amgen has obtained FDA approval under 42 U.S.C. § 262(k) to manufacture, use, offer for sale, and/or sell within the United States, or import into the United States, ABP 215, a biosimilar version of Genentech's Avastin® (bevacizumab) product.

257.    On information and belief based upon Amgen's purported notice of commercial marketing under 42 U.S.C. § 262(l)(8)(A), Amgen intends to, and will, offer for sale and/or sell within the United States, or import into the United States, ABP 215 on or about April 2018, which is before the expiration of the '869 patent.   On information and belief based upon Amgen's purported notice of commercial marketing under 42 U.S.C. § 262(l)(8)(A), Amgen intends to, and will, manufacture within the United States ABP 215 before April 2018.

258.    The submission of Amgen's aBLA to the FDA to obtain approval to engage in the commercial manufacture, use, offer for sale, and/or sale, or import into the United States, of ABP 215 before the expiration of the '869 patent is an act of infringement of one or more claims of the '869 patent under 35 U.S.C. § 271(e)(2)(C).  The factual basis that Amgen's conduct constitutes infringement of one or more claims of this patent is explained in Genentech's (l)(3)(C) contentions.

259.    Genentech will be irreparably harmed if Amgen is not enjoined from infringing one or more claims of the '869 patent.  Genentech is entitled to injunctive relief under 35 U.S.C. § 271(e)(4)(B) preventing Amgen from any further infringement.  Genentech has no adequate remedy at law.

260.    Amgen's commercial manufacture, use, offer for sale, and/or sale within the United States, or importation into the United States, of ABP 215 and before the expiration of the '869 patent will cause Genentech injury, entitling Genentech to damages or other monetary relief under 35 U.S.C. § 271(e)(4)(C).

## COUNT 22
## (INFRINGEMENT OF THE '302 PATENT)

261.    Plaintiffs incorporate each of the preceding paragraphs 1 through 30 as if fully set forth herein.

262.    United States Patent No. 8,633,302 ("the '302 patent") (Exhibit 27 hereto), was duly and legally issued on Jan. 21, 2014.

263.    Hoffmann-La Roche, Inc. is the owner of the '302 patent; Genentech is the exclusive licensee of the '302 patent with the sole right to enforce it pursuant to a Patent Licensing Agreement between Genentech and Hoffmann-La Roche, Inc. dated January 13, 2017.

264.    The '302 patent has not yet expired.

265.    The '302 patent was included on the list of patents provided by Genentech to Amgen pursuant to 42 U.S.C. § 262(l)(3)(A) on March 24, 2017.  The patent also was included on the lists of patents exchanged by Genentech and Amgen pursuant to 42 U.S.C. § 262(l)(5).

266.    Amgen has obtained FDA approval under 42 U.S.C. § 262(k) to manufacture, use, offer for sale, and/or sell within the United States, or import into the United States, ABP 215, a biosimilar version of Genentech's Avastin® (bevacizumab) product.

267.    On information and belief based upon Amgen's purported notice of commercial marketing under 42 U.S.C. § 262(l)(8)(A), Amgen intends to, and will, offer for sale and/or sell

within the United States, or import into the United States, ABP 215 on or about April 2018, which is before the expiration of the '302 patent.   On information and belief based upon Amgen's purported notice of commercial marketing under 42 U.S.C. § 262(*l*)(8)(A), Amgen intends to, and will, manufacture within the United States ABP 215 before April 2018.

268.    The submission of Amgen's aBLA to the FDA to obtain approval to engage in the commercial manufacture, use, offer for sale, and/or sale, or import into the United States, of ABP 215 before the expiration of the '302 patent is an act of infringement of one or more claims of the '302 patent under 35 U.S.C. § 271(e)(2)(C).  The factual basis that Amgen's conduct constitutes infringement of one or more claims of this patent is explained in Genentech's (*l*)(3)(C) contentions.

269.    Genentech will be irreparably harmed if Amgen is not enjoined from infringing one or more claims of the '302 patent.  Genentech is entitled to injunctive relief under 35 U.S.C. § 271(e)(4)(B) preventing Amgen from any further infringement.  Genentech has no adequate remedy at law.

270.    Amgen's commercial manufacture, use, offer for sale, and/or sale within the United States, or importation into the United States, of ABP 215 and before the expiration of the '302 patent will cause Genentech injury, entitling Genentech to damages or other monetary relief under 35 U.S.C. § 271(e)(4)(C).

## COUNT 23
## (INFRINGEMENT OF THE '196 PATENT)

271.    Plaintiffs incorporate each of the preceding paragraphs 1 through 30 as if fully set forth herein.

272.    United States Patent No. 8,710,196 ("the '196 patent") (Exhibit 28 hereto), was duly and legally issued on April 29, 2014.

273.    Genentech is the owner of all right, title, and interest in the '196 patent.

274.    Plaintiffs incorporate each of the preceding paragraphs as if fully set forth herein.

275.    The '196 patent was included on the list of patents provided by Genentech to Amgen pursuant to 42 U.S.C. § 262(*l*)(3)(A) on March 24, 2017.  The patent also was included on the lists of patents exchanged by Genentech and Amgen pursuant to 42 U.S.C. § 262(*l*)(5).

276.    Amgen has obtained FDA approval under 42 U.S.C. § 262(k) to manufacture, use, offer for sale, and/or sell within the United States, or import into the United States, ABP 215, a biosimilar version of Genentech's Avastin® (bevacizumab) product.

277.    On information and belief based upon Amgen's purported notice of commercial marketing under 42 U.S.C. § 262(*l*)(8)(A), Amgen intends to, and will, offer for sale and/or sell within the United States, or import into the United States, ABP 215 on or about April 2018, which is before the expiration of the '196 patent.   On information and belief based upon Amgen's purported notice of commercial marketing under 42 U.S.C. § 262(*l*)(8)(A), Amgen intends to, and will, manufacture within the United States ABP 215 before April 2018.

278.    The submission of Amgen's aBLA to the FDA to obtain approval to engage in the commercial manufacture, use, offer for sale, and/or sale, or import into the United States, of ABP 215 before the expiration of the '196 patent is an act of infringement of one or more claims of the '196 patent under 35 U.S.C. § 271(e)(2)(C).  The factual basis that Amgen's conduct constitutes infringement of one or more claims of this patent is explained in Genentech's (*l*)(3)(C) contentions.

279.    Genentech will be irreparably harmed if Amgen is not enjoined from infringing one or more claims of the '196 patent.  Genentech is entitled to injunctive relief under 35 U.S.C.

§ 271(e)(4)(B) preventing Amgen from any further infringement.  Genentech has no adequate remedy at law.

280.    Amgen's commercial manufacture, use, offer for sale, and/or sale within the United States, or importation into the United States, of ABP 215 and before the expiration of the '196 patent will cause Genentech injury, entitling Genentech to damages or other monetary relief under 35 U.S.C. § 271(e)(4)(C).

## COUNT 24
## (INFRINGEMENT OF THE '035 PATENT)

281.    Plaintiffs incorporate each of the preceding paragraphs 1 through 30 as if fully set forth herein.

282.    United States Patent No. 9,441,035 ("the '035 patent") (Exhibit 29 hereto), was duly and legally issued on Sept. 13, 2003.

283.    Genentech is the owner of all right, title, and interest in the '053 patent.

284.    Plaintiffs incorporate each of the preceding paragraphs as if fully set forth herein.

285.    The '035 patent was included on the list of patents provided by Genentech to Amgen pursuant to 42 U.S.C. § 262(l)(3)(A) on March 24, 2017.  The patent also was included on the lists of patents exchanged by Genentech and Amgen pursuant to 42 U.S.C. § 262(l)(5).

286.    Amgen has obtained FDA approval under 42 U.S.C. § 262(k) to manufacture, use, offer for sale, and/or sell within the United States, or import into the United States, ABP 215, a biosimilar version of Genentech's Avastin® (bevacizumab) product.

287.    On information and belief based upon Amgen's purported notice of commercial marketing under 42 U.S.C. § 262(l)(8)(A), Amgen intends to, and will, offer for sale and/or sell within the United States, or import into the United States, ABP 215 on or about April 2018, which is before the expiration of the '035 patent.   On information and belief based upon

Amgen's purported notice of commercial marketing under 42 U.S.C. § 262(*l*)(8)(A), Amgen intends to, and will, manufacture within the United States ABP 215 before April 2018.

288.    The submission of Amgen's aBLA to the FDA to obtain approval to engage in the commercial manufacture, use, offer for sale, and/or sale, or import into the United States, of ABP 215 before the expiration of the '035 patent is an act of infringement of one or more claims of the '035 patent under 35 U.S.C. § 271(e)(2)(C).  The factual basis that Amgen's conduct constitutes infringement of one or more claims of this patent is explained in Genentech's (*l*)(3)(C) contentions.

289.    Genentech will be irreparably harmed if Amgen is not enjoined from infringing one or more claims of the '035 patent.  Genentech is entitled to injunctive relief under 35 U.S.C. § 271(e)(4)(B) preventing Amgen from any further infringement.  Genentech has no adequate remedy at law.

290.    Amgen's commercial manufacture, use, offer for sale, and/or sale within the United States, or importation into the United States, of ABP 215 and before the expiration of the '035 patent will cause Genentech injury, entitling Genentech to damages or other monetary relief under 35 U.S.C. § 271(e)(4)(C).

### COUNT 25
### (INFRINGEMENT OF THE '809 PATENT)

291.    Plaintiffs incorporate each of the preceding paragraphs 1 through 30 as if fully set forth herein.

292.    United States Patent No. 9,487,809 ("the '809 patent") (Exhibit 30 hereto), was duly and legally issued on Nov. 8, 2016.

293.    Genentech is the owner of all right, title, and interest in the '809 patent.

294.    Plaintiffs incorporate each of the preceding paragraphs as if fully set forth herein.

295.    The '809 patent was included on the list of patents provided by Genentech to Amgen pursuant to 42 U.S.C. § 262(*l*)(3)(A) on March 24, 2017.  The patent also was included on the lists of patents exchanged by Genentech and Amgen pursuant to 42 U.S.C. § 262(*l*)(5).

296.    Amgen has obtained FDA approval under 42 U.S.C. § 262(k) to manufacture, use, offer for sale, and/or sell within the United States, or import into the United States, ABP 215, a biosimilar version of Genentech's Avastin® (bevacizumab) product.

297.    On information and belief based upon Amgen's purported notice of commercial marketing under 42 U.S.C. § 262(*l*)(8)(A), Amgen intends to, and will, offer for sale and/or sell within the United States, or import into the United States, ABP 215 on or about April 2018, which is before the expiration of the '809 patent.   On information and belief based upon Amgen's purported notice of commercial marketing under 42 U.S.C. § 262(*l*)(8)(A), Amgen intends to, and will, manufacture within the United States ABP 215 before April 2018.

298.    The submission of Amgen's aBLA to the FDA to obtain approval to engage in the commercial manufacture, use, offer for sale, and/or sale, or import into the United States, of ABP 215 before the expiration of the '809 patent is an act of infringement of one or more claims of the '809 patent under 35 U.S.C. § 271(e)(2)(C).  The factual basis that Amgen's conduct constitutes infringement of one or more claims of this patent is explained in Genentech's (*l*)(3)(C) contentions.

299.    Genentech will be irreparably harmed if Amgen is not enjoined from infringing one or more claims of the '809 patent.  Genentech is entitled to injunctive relief under 35 U.S.C. § 271(e)(4)(B) preventing Amgen from any further infringement.  Genentech has no adequate remedy at law.

53

300.     Amgen's commercial manufacture, use, offer for sale, and/or sale within the United States, or importation into the United States, of ABP 215 and before the expiration of the '809 patent will cause Genentech injury, entitling Genentech to damages or other monetary relief under 35 U.S.C. § 271(e)(4)(C).

### COUNT 26
### (DECLARATORY JUDGMENT AS TO 42 U.S.C. § 262(*l*)(9)(C))

301.     Genentech incorporates each of the preceding paragraphs 1 through 30 as if fully set forth herein.

302.     This claim arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

303.     Amgen's aBLA for ABP 215 was submitted to and approved by the FDA under 42 U.S.C. § 262(k), the subsection of the BPCIA governing licensure of biologic products as biosimilar or interchangeable to licensed reference products.

304.     On January 23, 2017, Genentech received what Amgen has represented to be its aBLA for ABP 215.  Both before and after receiving this, Genentech asked Amgen to provide certain additional non-aBLA information, as required by 42 U.S.C. § 262(*l*)(2)(A), relating to the manufacturing process for ABP 215.  Amgen has not produced this information.

305.     Amgen took the position that it had "satisfie[d] Amgen's production obligations under [42 U.S.C. §] 262(l)(2)(A)" by producing the aBLA only, and that this limited production "enable[d] Genentech to undertake its obligations under 42 U.S.C. § 262(*l*)(3)(A)."

306.     Genentech disputed, and continues to dispute, that Amgen's production of its aBLA satisfied Amgen's obligations under 42 U.S.C. § 262(*l*)(2)(A).

307.     Accordingly, there is a real, substantial, and continuing case or controversy between Genentech and Amgen regarding whether Amgen complied with 42 U.S.C. § 262(*l*)(2)(A).

308.     Genentech is entitled to a judgment that Amgen failed to provide the application and information required under 42 U.S.C. § 262(*l*)(2)(A), and that 42 U.S.C. § 262(*l*)(9)(C) therefore prohibits Amgen from bringing "an action under section 2201 of Title 28, for a declaration of infringement, validity, or enforceability of any patent that claims the biological product [bevacizumab] or a use of the biological product [bevacizumab]."

## COUNT 27
## (DECLARATORY JUDGMENT AS TO 42 U.S.C. § 262(*l*)(9)(B))

309.     Genentech incorporates each of the preceding paragraphs 1 through 30 as if fully set forth herein.

310.     This claim arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

311.     Notwithstanding Amgen's failure to comply with 42 U.S.C. § 262(*l*)(2)(A), Genentech provided Amgen with a list of patents on March 24, 2017, pursuant to 42 U.S.C. § 262(*l*)(3)(A).

312.     On May 23, 2017, Amgen served a statement of bases for its belief that certain Genentech patents were invalid and/or would not be infringed pursuant to 42 U.S.C. § 262(*l*)(3)(B)(ii)(I).

313.     Genentech disputed, and continues to dispute, that Amgen's statement of bases for its belief that Genentech's patents are invalid or would not be infringed satisfied Amgen's obligations under 42 U.S.C. § 262(*l*)(3)(B)(ii)(I).

ME1 26239115v.1

314.    Accordingly, there is a real, substantial, and continuing case or controversy between Genentech and Amgen regarding whether Amgen complied with 42 U.S.C. § 262(*l*)(3)(B)(ii)(I).

315.    Genentech is entitled to a judgment that Amgen failed to complete an action required of it under 42 U.S.C. § 262(*l*)(3)(B)(ii)(I), and that 42 U.S.C. § 262(*l*)(9)(B) therefore prohibits Amgen from bringing "an action under section 2201 of Title 28, for a declaration of infringement, validity, or enforceability of any patent included in the list described in [42 U.S.C. § 262(*l*)](3)(A), including as provided under paragraph [42 U.S.C. § 262(*l*)](7)."

## COUNT 28
## (DECLARATORY JUDGMENT AS TO 42 U.S.C. § 262(*l*)(9)(B))

316.    Genentech incorporates each of the preceding paragraphs 1 through 30 as if fully set forth herein.

317.    This claim arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

318.    Notwithstanding Amgen's noncompliance with 42 U.S.C. § 262(*l*)(3)(B)(ii)(I), on July 22, 2017, Genentech served Amgen with a detailed statement pursuant to 42 U.S.C. § 262(*l*)(3)(C), that described, on a claim-by-claim basis, and with respect to each patent for which Amgen provided statements under 42 U.S.C. § 262(*l*)(3)(B)(ii)(I), the factual and legal basis of Genentech's opinion that the patents will be infringed by the commercial marketing of ABP 215, as well as a response to Amgen's statement concerning validity and enforceability.

319.    After Genentech served its statement under 42 U.S.C. § 262(*l*)(3)(C), Genentech attempted to engage in good faith negotiations with Amgen pursuant to 42 U.S.C. § 262(*l*)(4).

56

320.     As described above, Amgen acted unilaterally to stall these negotiations, acted unilaterally to end them, and then misrepresented its interest in undertaking the prescribed resolution outlined in 42 U.S.C. § 262(*l*)(5).

321.     On October 6, 2017, while still soliciting Genentech's participation in § 262(*l*)(5), Amgen sued Genentech in the Central District of California seeking a declaratory judgment of invalidity, unenforceability, and/or noninfringement of all 27 patents included on the list of patents served by Genentech on Amgen on March 24, 2017, pursuant to § 262(*l*)(3)(A).

322.     Accordingly, there is a real, substantial, and continuing case or controversy between Genentech and Amgen regarding whether Amgen timely complied with 42 U.S.C. § 262(*l*)(5).

323.     Genentech is entitled to a judgment that Amgen failed to timely complete an action required of it under 42 U.S.C. § 262(*l*)(5), and that 42 U.S.C. § 262(*l*)(9)(B) therefore prohibits Amgen from bringing "an action under section 2201 of Title 28, for a declaration of infringement, validity, or enforceability of any patent included in the list described in [42 U.S.C. § 262(*l*)](3)(A), including as provided under paragraph [42 U.S.C. § 262(*l*)](7)."

## COUNT 29
## (DECLARATORY JUDGMENT AS TO 42 U.S.C. § 262(*l*)(9)(B))

324.     Genentech incorporates each of the preceding paragraphs 1 through 30 as if fully set forth herein.

325.     This claim arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

326.     On May 23, 2017, Amgen sent Genentech a letter purporting to comply with 42 U.S.C. § 262(*l*)(3)(B)(ii)(II).  That letter contained the following representation: ███████

████████████████████████████████████████████████████

57

████████████████████████████████████████████

███████████████████████████████████████ Amgen then

███████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████

██████ .

327.    Genentech relied on Amgen's representation.

328.    On October 6, 2017, Amgen sent Genentech a letter (attached hereto as Exhibit 31) providing "notice that it will commence commercial marketing of Mvasi™ (a/k/a ABP 215) no earlier than 180 days from the date of [the] letter."

329.    The date 180 days from the date of Amgen's October 6, 2017 letter is April 4, 2018.████████████████████████

330.    On October 9, 2017, Genentech sent a response (attached hereto as Exhibit 4), reminding Amgen that it "made a representation pursuant to 42 U.S.C. § 262(*l*)(3)(B)(ii)(II) that it will not market Mvasi™ ████████████████████████" and requesting that Amgen "confirm that Amgen will honor its statutory commitment and not attempt to commercialize Mvasi™ before that date."

331.    On October 9, 2017, Amgen responded with another letter (attached hereto as Exhibit 5) stating that it "made no such 'commitment'" and requesting that Genentech describe the "basis for [its] characterization that [Amgen's] statement under § 262(*l*)(3)(B)(ii)(II) is a 'statutory commitment' that [it] will not market Mvasi™ prior to a date certain."

332.    Upon information and belief, based upon the allegations contained in the correspondence cited above and the Complaint that it filed in the Central District of California, Amgen contends that it can begin marketing its biosimilar version of Avastin 180 days from October 6, 2017.  Amgen's contention contradicts the formal representation it made pursuant to 42 U.S.C. § 262(*l*)(3)(B), and contained in its letter of May 23, 2017, █████████████

██████████████████████████████████████████████████

█████████████████████

333.    Amgen's knowing and willful misrepresentation in its letter of May 24, 2017 that

██████████████████████████████████████████████████

███████████ is in violation of 42 U.S.C. § 262(*l*)(3)(B)(ii)(II).

334.    Accordingly, there is a real, substantial, and continuing case or controversy between Genentech and Amgen regarding whether Amgen complied with 42 U.S.C. § 262(*l*)(3)(B)(ii)(II).

335.    Genentech is entitled to a judgment that Amgen failed to comply with 42 U.S.C. § 262(*l*)(3)(B)(ii), and that 42 U.S.C. § 262(*l*)(9)(B) therefore prohibits Amgen from bringing "an action under section 2201 of Title 28, for a declaration of infringement, validity, or enforceability of any patent included in the list described in [42 U.S.C. § 262(*l*)](3)(A), including as provided under paragraph [42 U.S.C. § 262(*l*)](7)."

**COUNT 30**
**(DECLARATORY JUDGMENT THAT AMGEN MAY NOT MARKET** ██████████
███████████████████ **)**

336.    Genentech incorporates each of the preceding paragraphs 1 through 30 as if fully set forth herein.

337.    On May 23, 2017, Amgen sent Genentech a letter (attached hereto as Exhibit 1) purporting to comply with 42 U.S.C. § 262(*l*)(3)(B)(ii)(II).  That letter contained the following

promise: 

338.    Genentech relied on Amgen's representation.

339.    On October 6, 2017, Amgen sent Genentech a letter providing "notice that it will commence commercial marketing of Mvasi™ (a/k/a ABP 215) no earlier than 180 days from the date of [the] letter."

340.    The date 180 days from the date of Amgen's October 6, 2017 letter is April 4, 2018,

341.    Upon information and belief based upon the allegations contained in the correspondence cited above and the Complaint that it filed in the Central District of California, Amgen contends that it can begin commercial marketing of its biosimilar version of Avastin 180 days from October 6, 2017.  Amgen's contention contradicts the formal representation it made pursuant to 42 U.S.C. § 262(*l*)(3)(B), and contained in its letter of May 23, 2017,

342.    The representation included in Amgen's disclosure under 42 U.S.C. § 262(*l*)(3)(B)(ii)(II) that Amgen will not begin the marketing of its biosimilar

ME1 26239115v.1

███████████ is enforceable pursuant to the BPCIA, including under 42 U.S.C. § 262(*l*)(3)(B).

343.    The BPCIA prohibits an applicant from commencing commercial marketing of its product ████████████████████████ pursuant to 42 U.S.C. § 262(*l*)(3)(B)(ii)(II).

344.    There is an actual controversy between the parties concerning whether Amgen may market its biosimilar version of Avastin ██████████████████████ ██████████████████

345.    Genentech will be irreparably harmed if Amgen is permitted to market its biosimilar version of Avastin ████████████████

346.    Genentech requests a declaration that Amgen may not market its biosimilar version of Avastin ██████████████

## COUNT 31
## (INFRINGEMENT OF THE '672 PATENT)

347.    Plaintiffs incorporate each of the preceding paragraphs 1 through 30 as if fully set forth herein.

348.    The '672 patent was duly and legally issued on Oct. 24, 2017.

349.    Genentech is the owner of all right, title, and interest in the '672 patent.

350.    The '672 patent has not yet expired.

351.    Pursuant to 42 U.S.C. § 262(*l*)(7), on November 2, 2017 Genentech provided to Amgen  a supplement to its list of patents pursuant to 42 U.S.C. § 262(*l*)(3)(A) to include the '672 patent.  At that time, Genentech provided Amgen with a copy of the '672 patent.  Amgen notified Genentech of its contentions pursuant to 42 U.S.C. § 262(*l*)(3)(B), with respect to this patent by email dated December 1, 2017.  Amgen has knowledge of the '672 patent.

352.    Amgen has obtained FDA approval under 42 U.S.C. § 262(k) to manufacture, use, offer for sale, and/or sell within the United States, or import into the United States, ABP 215, a biosimilar version of Genentech's Avastin® (bevacizumab) product.

353.    For example, the sale of MVASI pursuant to its label will contribute to and induce infringement of, *inter alia*, claim 1 of the '672 patent.

354.    Claim 1 recites "a method of treating cancer in a patient comprising administering to the patient an effective amount of bevacizumab." For example, Amgen's product is indicated for the treatment of cancer, as set forth in Section 1 of the MVASI Label, and Amgen's MVASI Label instructs physicians on the dosage and administration necessary to administer an effective amount, as set forth in Section 2 of the MVASI Label.

355.    Claim 1 further recites, "wherein the patient has a grade III hypertensive event resulting from the bevacizumab administration." For example, Amgen's MVASI Label warns physicians in Section 5.7 about the relationship between administration of MVASI and hypertension. Administration of MVASI will result in a patients having a grade III hypertensive event resulting from the bevacizumab administration.

356.    Claim 1 further recites, "the method further comprising administering to the patient an antihypertensive agent in an amount sufficient to manage the grade III hypertensive event." For example, Amgen's MVASI Label instructs physicians in Section 5.7 in the management of hypertension. Amgen's MVASI Label instructs and encourages physicians to administer to the patient an antihypertensive agent in an amount sufficient to manage the grade III hypertensive event.

357.    Claim 1 further recites, "while continuing to treat the patient with bevacizumab, the treatment being carried out without altering the dosing regimen." For example, Amgen's

MVASI Label instructs physicians in Sections 2,4 and 5.7 concerning how to administer MVASI while managing hypertension.  Amgen's MVASI Label instructs and encourages physicians to administer to the patient an antihypertensive while continuing to treat the patient with bevacizumab and without altering the dosing regimen.

358.     As illustrated above, the use of Amgen's MVASI as described in the MVASI Label will infringe claim 1 of the '672 patent.

359.     The use of Amgen's MVASI pursuant to the MVASI Label also will infringe claims 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 13, 14, 15, 16, 17, and 18.  Amgen's December 1, 2017 contentions ███████████████████████████████████████████████

███████████████████████████████████████

360.     On information and belief, the use of MVASI as described in Amgen's MVASI Label will encourage, suggest, teach, and/or induce the product's use in connection with antihypertensive therapy as claimed in the '672 patent.

361.     On information and belief based upon Amgen's purported notice of commercial marketing under 42 U.S.C. § 262(*l*)(8)(A), Amgen intends to, and will, offer for sale and/or sell within the United States, or import into the United States, ABP 215 on or about April 2018, which is before the expiration of the '672 patent.  On information and belief based upon Amgen's purported notice of commercial marketing under 42 U.S.C. § 262(*l*)(8)(A), Amgen intends to, and will, manufacture within the United States ABP 215 █████████████

362.     On information and belief, Amgen plans and intends to, and will, actively induce infringement of the '672 patent when it begins commercial marketing of MVASI.

363.     On information and belief, Amgen knows that MVASI and its proposed labeling are especially made or adapted for use in infringing the '672 patent, and that MVASI and its

proposed labeling are not suitable for substantial noninfringing use.  On information and belief, Amgen plans and intends to, and will, contribute to infringement of the '672 patent when it begins commercial marketing of MVASI.

364.    The foregoing actions by Amgen and the submission of Amgen's aBLA to the FDA to obtain approval to engage in the commercial manufacture, use, offer for sale, and/or sale, or import into the United States, of ABP 215 before the expiration of the '672 patent constitute infringement of '672 patent under 35 U.S.C. § 271(e)(2)(C), active inducement of infringement of the '672 patent under 35 U.S.C. § 271(b), and contribution to the infringement by others of the '672 patent under 35 U.S.C. § 271(c).

365.    Genentech will be irreparably harmed if Amgen is not enjoined from infringing one or more claims of the '672 patent.  Genentech is entitled to injunctive relief under 35 U.S.C. § 271(e)(4)(B) preventing Amgen from any further infringement.  Genentech has no adequate remedy at law.

366.    Amgen's commercial manufacture, use, offer for sale, and/or sale within the United States, or importation into the United States, of ABP 215 and before the expiration of the '672 patent will cause Genentech injury, entitling Genentech to damages or other monetary relief under 35 U.S.C. § 271(e)(4)(C).

WHEREFORE, Genentech requests the following relief:

(a)    A judgment that Amgen has infringed the patents in suit.

(b)    Damages pursuant to 35 U.S.C. § 271(e)(4)(C), if applicable, in the form of lost profits but in no event less than a reasonable royalty.

64

(c)      A judgment that the infringement has been willful and an enhancement of damages.

(d)      An award for an accounting of damages from Amgen's infringement;

(e)      Preliminary and/or permanent equitable relief, including pursuant to 35 U.S.C. § 271(e)(4)(B), including but not limited to a preliminary and permanent injunction that enjoins Amgen, its officers, partners, agents, servants, employees, parents, subsidiaries, affiliate corporations, other related business entities, and all other persons acting in concert, participation, or in privity with them and/or their successors or assigns from infringing the patents in suit, or contributing to the same, or actively inducing anyone to do the same, by acts including the manufacture, use, offer to sell, sale, distribution, or importation of any current or future versions of a product that infringes, or the use or manufacturing of which infringes the patents in suit;

(f)      A judgment that Amgen has violated 42 U.S.C. § 262(*l*)(2)(A) and that 42 U.S.C. § 262(*l*)(9)(C) therefore prohibits Amgen from filing a declaratory judgment action with respect to "any patent that claims the biological product or a use of the biological product."

(g)      A judgment that Amgen has violated § 262(*l*)(3)(B)(ii)(I) and that 42 U.S.C. § 262(*l*)(9)(B) therefore prohibits Amgen from filing a declaratory judgment action with respect to "any patent included in the list described in [42 U.S.C. § 262(*l*)](3)(A), including as provided under paragraph [42 U.S.C. § 262(*l*)](7)."

(h)      A judgment that Amgen has violated § 262(*l*)(5) and that 42 U.S.C. § 262(*l*)(9)(B) therefore prohibits Amgen from filing a declaratory judgment action with respect to "any patent included in the list described in [42 U.S.C. § 262(*l*)](3)(A), including as provided under paragraph [42 U.S.C. § 262(*l*)](7)."

65

(i)      A judgment that Amgen has violated § 262(*l*)(3)(B)(ii)(II) and that 42 U.S.C. § 262(*l*)(9)(B) therefore prohibits Amgen from filing a declaratory judgment action with respect to "any patent included in the list described in [42 U.S.C. § 262(*l*)]3)(A), including as provided under paragraph [42 U.S.C. § 262(*l*)](7)."

(j)      Preliminary and/or permanent equitable relief, including but not limited to a preliminary and permanent injunction that enjoins Amgen, its officers, partners, agents, servants, employees, parents, subsidiaries, affiliate corporations, other related business entities, and all other persons acting in concert, participation, or in privity with them and/or their successors or assigns from continuing to prosecute Case No. 17-7349 in the Central District of California.

(k)      A judgment that Amgen's representation under § 262(*l*)(3)(B)(ii)(II) to refrain from marketing ABP 215 ▬▬▬▬▬▬▬▬▬ is binding and that Amgen may begin commercial marketing of ABP 215 ▬▬▬▬▬▬▬▬ .

(l)      A declaration that this is an exceptional case and an award of attorneys' fees pursuant to 35 U.S.C. § 285 and 35 U.S.C. § 271(e)(4);

(m)      An award of Plaintiffs' costs and expenses in this action; and

(n)      Such further relief as this court may deem just and proper.

66

## JURY DEMAND

Plaintiffs Genentech, Inc. and City of Hope, by and through their undersigned counsel, hereby demand, pursuant to Fed. R. Civ. P. 38, a trial by jury on all claims so triable in this action.

MCCARTER & ENGLISH, LLP

/s/ Daniel M. Silver
Michael P. Kelly (# 2295)
Daniel M. Silver (# 4758)
Benjamin A. Smyth (# 5528)
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, Delaware 19801
Tel.: (302) 984-6300
Fax: (302) 984-6399
mkelly@mccarter.com
dsilver@mccarter.com
bsmyth@mccarter.com

*Attorneys for Plaintiffs Genentech, Inc.*
*and City of Hope*

OF COUNSEL:

Paul B. Gaffney
David I. Berl
Thomas S. Fletcher
Teagan J. Gregory
Jonathan S. Sidhu
Williams & Connolly LLP
725 Twelfth St. NW
Washington, DC 20005
(202) 434-5000

*Attorneys for Plaintiff Genentech, Inc.*

December 6, 2017

67